INDIANA STATE DEPARTMENT OF PUBLIC WELFARE and County Department of Public Welfare of Vanderburgh County, Appellants (Respondents Below),

v.

Opal FOSTER, Appellee (Petitioner Below).

No. 82A01–8902–CV–56.

Court of Appeals of Indiana, First District.

Aug. 17, 1989.

Linley E. Pearson, Atty. Gen., Patricia K. Slater, Deputy Atty. Gen., Indianapolis, for appellants.

Katherine J. Rybak, Stephen E. Culley, Legal Services Organization, Evansville, for appellee.

ROBERTSON, Judge.

The appellants-respondents Indiana State Department of Public Welfare and the County Department of Public Welfare of Vanderburgh County (collectively referred to as DPW) appeal a ruling made on judicial review which determined that the appellee-petitioner Opal Foster was eligible for Medicaid during the month of May, 1987.

The facts show that Foster made an application for Medicaid with the DPW in April, 1987. The DPW made a determination that Foster was financially ineligible for a period of several months including May, 1987. Foster's resources as of May 1, 1987 included a joint bank account held with her husband in the amount of $2043.65. Foster and her husband also had six life insurance policies which had a total cash value of $1948.01, which made her financial resources in the approximate sum of slightly less than $4000. In order to qualify for Medicaid Foster had a resource limitation of $2250 or less. *See* 470 IAC 9.1–3–17(a). However, IND.CODE 30–2–10–1 *et seq.* permits the establishment of a funeral trust with the money used to create the trust not counting against the financial resources of the applicant. On April 21, 1987, Foster and her husband signed six irrevocable assignment and acceptance of assignment documents for their insurance policies. The assignments were mailed by the funeral home that day to the respective insurance companies. Subsequently, Life of Virginia Insurance Company lost three of the four assignments sent to it. On May 10, 1987, three additional assignments were sent to Life of Virginia Insurance Company. The one assignment which was not lost was recorded on May 1, 1987. The other two assignments sent to the other two insurance companies were accepted by those companies on April 30 and May 4,

1987. The net result was that only one of the assignments had been consented to and accepted by the insurance companies prior to May 1, 1987.

The significance of the May 1 date is contained in certain DPW regulations:

> An applicant or recipient is ineligible for medical assistance for any month in which the total equity value of all non-exempt resources exceeds the applicable limitation, set forth below, on the first day of the month:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (2) $2,250 for the applicant or recipient and his spouse. 470 IAC 9.1–3–17
>
> \*　　\*　　\*　　\*　　\*　　\*

> Resources are all of the real and personal property owned by the applicant or recipient and his spouse or parent(s). Resources must be available in order to be considered in the eligibility determination. If the individual has the right, authority or ability to liquidate the property, or his share of the property, it is considered an available resource. 470 IAC 9.1–3–16(a)(1)

Foster sought judicial review of a DPW determination that she was not eligible for Medicaid in May, 1987, because her financial resources were in excess of the limit. The trial court ruled in Foster's favor with the main thrust of the findings and conclusions being that Foster had done all that she could do to divest her interest in the policies.

> The DPW appeals and raises one issue: Whether the trial court erred as a matter of law in determining that the cash surrender value of life insurance policies was not an available resource for purposes of Medical Assistance to the Aged eligibility after the policies were irrevocably assigned to a funeral home and the assignments mailed to the insurance companies.

We are of the opinion that the trial court correctly interpreted the facts presented to it. It is obvious that the trial court's decision is based upon whether or not the assignments made by Foster ended any

rights, authority, or ability to liquidate the resources.

All six of the assignments signed by Foster and her husband read:

> For value received and hereby acknowledged by Assignor, Assignor hereby irrevocably assigns to Assignee all of Assignor's right, title, and interest, including but not limited to, the right to exercise any options, rights and privileges in and to Policy No. _____ ("Policy") issued to Assignor and on the life of Assignor by _____ ("Insurer") and all moneys payable thereunder, such policy being herewith delivered to Assignee, receipt whereof is hereby acknowledged by Assignee.
>
> This irrevocable assignment and Assignor's promises hereunder are made in payment to Assignee for all goods and services to be provided by Assignee under and pursuant to that certain funeral services agreement entered into this date
> . . .

Remembering that Foster made an irrevocable assignment to the funeral home as a part of the trust agreement, we believe that the following is appropriate:

> An assignment is a transfer which confers a complete and present right in a subject matter to the assignee. In determining whether an assignment has been made, the question is one of intent. A written agreement assigning a subject matter must manifest the assignor's intent to transfer the subject matter clearly and unconditionally to the assignee. (Citations omitted.)

*Brown v. Indiana Nat. Bank* (1985), Ind. App., 476 N.E.2d 888 at 894. We believe it clear that the assignment was made at the time of signing by Foster, which was prior to May 1.

The DPW contends that language in the policy does not permit the assignment to be complete until it has been filed with the company. We find this contention not applicable to these facts.

The policies contain a provision which says that no assignment *shall be binding on the company* unless it has been filed with the company. (Our emphasis.) Such

a provision would appear not to have any effect upon the agreement between Foster and the funeral home. Its apparent purpose is to protect the company against payment to improper parties.

We conclude that the trial court did not err in ruling that Foster had completed the assignments prior to May 1 and, as a result, was eligible for Medicaid for the month of May, 1987.

Judgment affirmed.

RATLIFF, C.J., and CONOVER, J., concur.