In re Gary R. FROID, Debtor.

Lawrence S. KLEINFELD,
Trustee, Plaintiff,

v.

F.D.I.C., Defendant.

Gary R. FROID, Plaintiff,

v.

F.D.I.C., Defendant.

Bankruptcy No. 87–6320–8P7.
Adv. Nos. 88–461, 88–476.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 22, 1989.

Jere Fishback, St. Petersburg, Fla., for plaintiff/trustee.

Zala Forizs, St. Petersburg, Fla., for Gary Froid/debtor.

Robert A. Soriano, Tampa, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matters under consideration are the issues raised in two adversary proceedings, one filed by Gary F. Froid (Debtor), the other filed by Lawrence S. Kleinfeld, Trustee of the Debtor's estate (Trustee). Both Plaintiffs seek a determination of the validity and extent of the FDIC's lien on certain renewal commissions to be paid to the Debtor post-Petition and the Trustee for renewal commissions on renewals of life insurance policies sold by the Debtor pre-petition. The lien claimed by the FDIC is based on a security agreement signed by the Debtor granting a security interest to Park Bank, a predecessor in interest of the FDIC. The FDIC counterclaimed seeking a determination that its security interest in the renewal commissions is superior to any interest of the Debtor or the Trustee. The two adversary proceedings were consolidated and scheduled for one final evidentiary hearing.

The following facts which are relevant and germane to the matter under consider-

ation as established at the final evidentiary hearing are as follows:

The Debtor is a graduate of Harvard University and has worked in the insurance industry since 1959. He is a certified financial planner and a certified life underwriter and since September 1, 1966, has been the sole district agent for Pinellas County for Northwestern Mutual Life Insurance Company (NML). (Pl's Exhibit No. 5.) The Debtor sells life and health insurance only and for each of the past 28 years has ranked among the top 300 life insurance salesmen in dollar amount of sales in the nation and served in the past as president of the Society of Certified Life Underwriters. He is consistently rated first among NML agents in the Tampa Bay area in the rate of renewals of life insurance policies sold. Nationwide, the Debtor ranks in the top 1% of NML agents in renewals of NML policies sold. For the past 27 years NML has given the Debtor an annual award for his unusually high rate of life policy renewals.

Under his contract, the Debtor is entitled to be paid a renewal commission by NML regardless of whether the Debtor remains an agent of NML, during the first nine years following issuance by NML of a life policy sold by the Debtor. To this extent, his right to receive commissions is vested. However, if a life policy holder dies or cancels the policy during the nine-year period, the Debtor's right to receive renewal commissions on that policy ends. (Pl's Exhibit No. 7) Ninety five percent of the lapses in renewal commissions that the Debtor has experienced result from the customers cancelling the NML policy as opposed to customer death. The majority of the Debtor's renewal commission income comes from renewals by five large policyholders which provide between 60–80% of all of the Debtor's renewal commission income. (Pl's Exhibit No. 8.) In addition, the Debtor receives income from NML first in his capacity as district agent where he is paid for managing all NML agents working in his agency; second, he receives commissions on sales made by him directly.

In February of 1985, the Debtor executed in favor of Park Bank, a now defunct financial institution, a note for $800,000.00 and a security agreement which pledged, among other things, his commissions on all NML policies sold by him as security for the loan. Park Bank perfected the security interest, by filing a UCC–1 Financing Statement with the Florida Secretary of State on March 19, 1984. (Pl's Exh. No. 4) After the Debtor executed the note and Security Agreement, FDIC was appointed Receiver for Park Bank and assumed all Park Bank's rights under the note and security agreement, which it subsequently acquired by the FDIC in its separate corporate capacity.

On November 23, 1987, the Debtor filed his voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code on November 23, 1987. Shortly thereafter, the Debtor filed an adversary proceeding against the Trustee styled, "Froid v. Kleinfeld, Adversary No. 87–479", seeking determination by the court the Debtor's entitlement to renewal commissions on insurance policies sold by him prepetition. This adversary proceeding was settled ultimately by the Trustee and the Debtor. Based on the settlement approval by this court, all renewal commissions were to be evenly divided between the Debtor and the Trustee without prejudice to FDIC's claim against those renewal commissions already received by the Trustee or those yet to be received in the future (Pl's Exh. No. 3).

It appears that immediately following the filing of the Debtor's bankruptcy petition, pursuant to the Agreement between the Trustee and the Debtor, the Trustee began receiving 50% of all postpetition renewal commissions paid by NML to the Debtor on policies sold by him prepetition. As of the final evidentiary hearing, the Trustee had been paid $51,613.40 as his share of postpetition renewal commissions on NML policies. These monies were deposited by the Trustee into his bank account, established by the Trustee for the Debtor's estate. This is also the account in which commissions paid on non-NML policies and proceeds from sale of bank stock of the Debtor, rental income from a condo-

minium that the Debtor had owned, and funds being held in escrow by the Trustee, pending resolution of the Trustee's litigation with one of the Debtor's former partners. (Pl's Exh. No. 2)

It appears that the Debtor services his clientele's policies personally rather than delegating these tasks to his staff. The Debtor personally reviews every item of correspondence that is delivered to his office which relates to an existing policy he has sold. Further, the Debtor maintains that he reviews every entry in his office's daily telephone log and attempts to personally contact every owner of a policy he has sold at least every 18 months. The Debtor concentrates on sales of large policies to wealthy individuals, most of which are tax related and designed to reduce the client's tax burden. Because of this, these policies require constant updating to accommodate the annual changes in the U.S. Tax Code.

Both the Debtor and the Trustee contend that even though legally the Debtor is not required to continue his agency in NML in order to be entitled to collect renewal premiums, that due to the peculiar nature of Debtor's clientele most NML policies sold by the Debtor prepetition would lapse in the postpetition period unless the Debtor continued to render personal service to the policyholders post-petition. Based on the foregoing, it is the Debtor's contention that the commissions are actually earned postpetition, accordingly the Debtor and the Trustee take the position that the postpetition renewal commissions free from the FDIC's lien by virtue of 11 U.S.C. § 552. In the alternative, the Trustee contends that the postpetition renewal commissions paid to date have been commingled by the Debtor and Trustee with funds from other sources and, therefore, the FDIC's lien has been destroyed pursuant to Florida Statute § 679.306.

The threshold question is whether the renewal commissions are property of the estate pursuant to § 541 of the Bankruptcy Code.

§ 541. Property of the estate
(a) The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.

■ Although the Debtor's personal service to his clientele postpetition has helped to make him a success in the industry, it is clear that the bulk of the work to develop the relationships with these clients was performed prepetition. Further, the renewal commissions would still be paid even if the Debtor terminated his relationship with NML. There is no evidence that any policyholder would actually cancel his policy if the Debtor ceased servicing the policy and another agent took up the reins. Renewal commissions which are not conditioned on future services, will be deemed property of the estate. *In re Parker*, 9 B.R. 447 (Bkrtcy.M.D.Ga.1981) *In re Malloy*, 2 B.R. 674 (Bkrtcy.M.D.Fla.1980).

In *In re Parker, supra,* the debtor was an insurance agent, who, pursuant to his contract, had an unconditional vested right to receive renewal commissions on existing policies. The court determined that the renewal commissions were property of the estate. In so holding, the court noted that the debtor's entitlement to receive renewal commissions was in no way conditioned upon post-petition services. *See also Mutual Trust Life Ins. Co. v. Wemyss,* 309 F.Supp. 1221 (D.Me.1970).

■ Therefore, this Court is satisfied that the Debtor earned his right to the renewal commissions prepetition, that the renewal commissions were vested prepetition, and thus, the renewal commissions are properties of the estate.

This being so, it follows that the next question is whether the FDIC's security interest survives the filing of the Chapter 11 petition by virtue of § 552 of the Bankruptcy Code.

■ Section 552(a) of the Bankruptcy Code provides in pertinent part:

§ 552. **Postpetition effect of security interest.**

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

The Trustee contends, and this court agrees that by the clear language of § 552(a) the FDIC's lien cannot attach to the renewal commissions acquired postpetition unless they fit into one of the exceptions listed in § 552(b).

§ 552(b)

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

Relying on § 552(b) the FDIC urges that the renewal commissions constitute "proceeds" acquired by the estate postpetition. This court is satisfied that there is no support for that proposition. This is so because the security interest granted by the Debtor to the predecessor-in-interest of the FDIC, Park Bank, was granted to the renewal commissions and not to some other collateral from which the renewal commissions are derived thus could be classified as "proceeds" of a collateral. To come within the exception immunizing proceeds from the impact of § 552(a) there must be a collateral on which the party has a valid enforceable security interest which collateral produced proceeds through liquidation of the collateral itself. Neither do the re-newal commissions qualify to be products, offsprings, rents or profits of a collateral encumbered by the security interest claimed by the secured party. This being the case, it is clear that the security interest claimed by the FDIC did not survive the commencement of the bankruptcy case. In light of the foregoing, it is unnecessary to discuss the scope and reach of § 679.306, Fla.Stat., which deals with tracing monies derived from the disposition of collateral.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the postpetition renewal commissions earned by the Debtor are properties of the estate and pursuant to § 552(a) by virtue of the filing of the Chapter 11 petition, the FDIC's lien has been extinguished.

A separate Final Judgment will be entered in accordance with the foregoing.

DONE AND ORDERED.