**Richard Albert SMOKER and Phyllis Ann Smoker, Appellants,**

**v.**

**HILL & ASSOCIATES, INC., John Alden Insurance Company, and Sarah Christensen, Appellees.**

**Tedd E. Mishler, United States Trustee.**

**No. 3:96cv465 AS.**

United States District Court, N.D. Indiana, South Bend Division.

Jan. 24, 1997.

Mark F. James, Berger, James, Gammage & Wilber, South Bend, IN, for Richard Albert Smoker, Phyllis Ann Smoker.

Robert C. Whippo, James R. Brotherson, Chester, Pfaff & Brotherson, Elkhart, IN, for Hill & Associates, Inc.

William G. Beatty, Johnson & Bell, Ltd., Chicago, IL, for John Alden Insurance Company.

Michael A. Metz, Sr., Elkhart, IN, for Sarah Christensen.

Tedd E. Mishler, Michigan City, IN, Pro Se.

## *MEMORANDUM AND ORDER*

ALLEN SHARP, Chief Judge.

Debtors Richard Albert Smoker and Phyllis Ann Smoker appeal from a final decision of the United States Bankruptcy Court granting summary judgment to Hill & Associates, Inc. ("Hill"), concerning Hill's Motion for Relief from Stay, Abandonment and Adequate Protection, and the debtors' objection thereto. Specifically, the bankruptcy court's decision lifted the automatic stay with respect to certain insurance commissions (and proceeds therefrom) in which Hill asserts a security interest. This court has jurisdiction over the debtors' appeal pursuant to 28 U.S.C. § 158(a).

## I. BACKGROUND

Debtor Richard Smoker ("Smoker") was a co-owner, officer, and employee of a corporation that brokered property and casualty insurance policies under the name of "Hill & Smoker Insurance, Inc." Shortly after Smoker left his employment with that corporation, he was named a defendant in a state court lawsuit filed by the corporation (renamed Hill & Associates, Inc.) in Elkhart Superior Court. The state court issued a preliminary injunction against Smoker which, *inter alia,* required him to relinquish monies, checks, and business records taken from the corporation.

To settle the state court litigation, Richard Smoker, Hill & Associates, Inc., Lawrence L. Hill (owner of Hill & Associates, Inc.), and Shirley Smoker (Richard Smoker's sister) entered into a Compromise and Settlement Agreement ("the Settlement Agreement"). Under the Settlement Agreement, Smoker was required to pay Lawrence Hill the sum of $50,000 plus interest, costs, and attorney's fees. Smoker further agreed to indemnify Hill from obligations totaling $84,568 to persons (including appellee Sarah Christensen) who might have claims against Hill.[1]

---

1. Apparently, Smoker had either borrowed funds personally or had represented that he was borrowing funds on behalf of Hill. *See* Bankr.Mem. of Decision (May 1, 1996) at 2.

The Settlement Agreement also required Smoker to deliver an Irrevocable Collateral Assignment of Insurance Commissions ("Collateral Assignment") to Hill. The Collateral Assignment provided, among other things, for the transfer of

> all of Smoker's right, title, and interest in and to all commissions, moneys, and proceeds ("Commissions") now due or that may hereafter become due to Smoker in connection with placement, sale, or brokering of insurance contracts, policies, or products heretofore place, sold, or brokered by Smoker or Smoker's agents or employees or by any agents or employees of any corporation or business entity which is owned or controlled by Smoker.

Bankr.Mem. of Decision (May 1, 1996) at 3 (quoting Exh. B. to Stipulation of Facts at 1). In the event of Smoker's default on his obligations under the Settlement Agreement, the Collateral Assignment gave Hill the right to transmit a copy of the Collateral Assignment to any insurance company from which Smoker was or became entitled to receive commissions. The terms of the Collateral Assignment provided that if Smoker received any commissions due Hill after the latter gave notice to the insurance company owing the commissions, he would accept the commissions as trustee for Hill and would deliver them promptly to Hill. The Collateral Assignment further provided that its terms would remain irrevocable until Smoker had discharged all of his obligations under the Settlement Agreement. Lawrence L. Hill (on behalf of Hill & Associates, Inc.) and Smoker executed the Collateral Assignment on April 15, 1993, in the presence of a notary public.

Hill filed UCC–1 financing statements on April 19, 1993, with the Elkhart County Recorder and the Indiana Secretary of State covering all insurance commissions which were then due and payable or which would later became due and payable. Thereafter, on April 27, 1994, Hill sent notices of the Collateral Assignment to a number of insurance companies along with a demand that each company turn over the commissions which would otherwise be payable to Smoker but for the Collateral Assignment. Although many of the companies complied with the notice, some did not—including the appellee John Alden Insurance Company ("Alden").

Following Alden's receipt of notice of the Collateral Assignment, Smoker requested that Alden disregard the terms of the Collateral Assignment and continue to pay commissions from business he had generated for Alden directly to him. Alden agreed to abide by Smoker's instructions not to honor the Collateral Assignment in favor of Hill, provided that Smoker indemnify and hold Alden harmless from any claims, costs, or judgments arising from its decision. Smoker signed Alden's letter to that effect, indicating his willingness to indemnify the company. Thereafter, Alden paid Smoker $11,902.76 in commissions and held the additional sum of $16,659.42.

Appellee Hill & Associates, Inc., holds a secured claim against Smoker in the amount of $59,428.85, together with accrued interest thereon from August 14, 1993, at the daily rate of $13.70. In addition, Hill has an unsecured claim against Smoker in the amount of $78,632.75, representing sums which Hill was required to pay to persons (including appellee Christensen) whom Smoker had agreed to pay under the terms of the Settlement Agreement. Those payments became necessary when Smoker failed to honor his agreement to indemnify Hill against the claims of persons from whom Smoker had borrowed money.

The debtors filed their voluntary petition for relief under Chapter 13 of the Bankruptcy Code on January 4, 1995. Thereafter, on March 2, 1995, appellee Hill & Associates, Inc., filed its Motion for Relief from Stay, Abandonment and Adequate Protection. After the parties filed their stipulation of facts on February 6, 1996, the bankruptcy court took the matter under advisement. On February 12, 1996, the debtors and Hill filed their respective motions for summary judgment concerning Hill's Motion for Relief from Stay, Abandonment and Adequate Protection.

In its Memorandum of Decision dated May 1, 1996, the bankruptcy court granted Hill's motion for summary judgment and denied the debtors' cross-motion for summary judgment. Although the bankruptcy court con-

cluded that Smoker's contractual right to receive commissions, which had been conditionally assigned to Hill, remains property of the debtors' estate, the court lifted the automatic stay with respect to the commissions in which Hill asserts a security interest, holding that (1) Hill holds a valid security interest in the commissions under Indiana law; (2) Hill duly perfected its security interest in the commissions; (3) the commissions remain subject to Hill's perfected security interest pursuant to 11 U.S.C. § 552(b)(1), notwithstanding the debtors' Chapter 13 petition; (4) the lack of adequate protection of Hill's security interest in the commissions is cause for lifting the automatic stay pursuant to 11 U.S.C. § 362(d)(1); and (5) the commissions which are subject to Hill's security interest are burdensome and of inconsequential value and benefit to the debtors' estate and should be abandoned pursuant to 11 U.S.C. § 554(b).

■ The debtors filed their timely notice of appeal in the bankruptcy court on May 10, 1996. Thereafter, however, the appellants failed to file or serve a designation of the items to be included in the record and a statement of the issues to be presented on appeal as required by Rule 8006 of the Federal Rules of Bankruptcy Procedure. Consequently, the only documents transmitted to this court by the Clerk of the bankruptcy court were the notice of appeal and certified copies of the bankruptcy court's judgment, its Memorandum of Decision, and the docket in the bankruptcy case below.

Rule 8001 of the Federal Rules of Bankruptcy Procedure conveys broad discretion on the district courts to take such action as they deem appropriate when determining whether to dismiss an appeal due to missing designations and statements of issues on appeal. *See* FED.R.BANKR.P. 8001(a). Because the record in the present cause does not show bad faith or a consistent pattern of dilatory behavior, *see In re Scheri*, 51 F.3d 71, 74 (7th Cir.1995); *In re Bulic*, 997 F.2d 299, 303 (7th Cir.1993), and because the appellants timely filed their appellate brief, this court will not dismiss the Smokers' appeal. However, the court's conclusion that dismissal is not warranted in this instance in no sense constitutes a precedent for this court to allow appellants to avoid their procedural responsibilities.

## II. DISCUSSION

Pursuant to the terms of the Collateral Assignment, Hill gained the right upon Smoker's default under the Settlement Agreement to collect the commissions directly from the insurance companies until Smoker satisfied his obligations to Hill. In addition, Smoker was obligated to accept and deliver promptly to Hill any commissions that became due under the Settlement Agreement after Hill gave notice of the Collateral Assignment to the insurance companies.

■ Upon the filing of the Chapter 13 petition, Smoker's contractual rights to the placement, sale, or brokering of insurance contracts, policies, or products—including the right to payment of commissions conditionally assigned to Hill—became property of the debtors' estate. *See* 11 U.S.C. § 541(a)(1) (1993). Any commissions received subsequent to the filing of the bankruptcy petition also became property of the debtors' estate. *Id.* § 541(a)(6), (7); § 1306(a).

This appeal presents two issues for review: (1) whether insurance commissions purportedly assigned by a Chapter 13 debtor prior to the petition date and payable after the filing of the Chapter 13 petition remain subject to a perfected security interest in the purported assignee's favor pursuant to the exception set forth in 11 U.S.C. § 552(b)(1); and (2) whether appellee/creditor Hill & Associates, Inc., is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and abandonment of the assigned insurance commissions pursuant to 11 U.S.C. § 554(b).

### A. Standard of Review

■ In reviewing a bankruptcy court's decision pursuant to 28 U.S.C. § 158(a), the district court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling. FED.R.BANKR.P. 8013. Although a decision granting or denying a motion to lift the

automatic stay pursuant to 11 U.S.C. § 362(d) ordinarily may be overturned only upon a showing that the bankruptcy court abused its discretion, *In re C & S Grain Co., Inc.*, 47 F.3d 233, 238 (7th Cir.1995); *In re Boomgarden*, 780 F.2d 657, 660 (7th Cir. 1985), the present action involves an appeal from an order granting summary judgment as to the creditor's request to lift the automatic stay. A bankruptcy court's decision to grant summary judgment is purely a question of law. *Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 88 (6th Cir.1993).

◼ Appellate courts apply the same standards of review in examining bankruptcy court decisions that govern appeals in other cases. *Citizens Nat'l Bank & Trust Co. v. Serelson (In re Burkart Farm & Livestock)*, 938 F.2d 1114, 1115 (10th Cir.1991). Thus, since a bankruptcy court's conclusions of law are subject to plenary review by the district court, this court must conduct a *de novo* review of the bankruptcy court's decision to lift the stay.[2] *In re Batie*, 995 F.2d at 88; *see Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir.1993); *Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 988 (2d Cir.1990), *cert. denied*, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). *De novo* review requires the district court to make an independent examination of the bankruptcy court's judgment without giving deference to that court's analysis or conclusions. *See Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1210 (7th Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984).

### B. Summary Judgment Standard

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.BANKR.P. 7056(c); *see* FED.R.CIV.P. 56(c). "A fact is material for purposes of summary judgment only if it might effect the outcome of a case under governing law." *JPM, Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir.1996); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The operative inquiry is whether, based upon all the documents submitted, a reasonable trier of fact could find by a preponderance of the evidence that the moving party is entitled to a verdict. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. A trial court must enter summary judgment if, in viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, the court determines that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### C. Analysis

Chapter 13 of the Bankruptcy Code permits individual debtors to structure repayment of their indebtedness through a flexible repayment plan approved by the bankruptcy court and supervised by a standing trustee. Thus, unlike debtors who opt for liquidation under Chapter 7, Chapter 13 debtors may retain their property by agreeing to repay creditors over a period not exceeding five years. *See* 11 U.S.C. § 1322(a)(1), (d) (1994).

The debtors in this case had been unable, prior to the bankruptcy court's summary judgment ruling, to submit a confirmable Chapter 13 plan due to the uncertainty of whether they would be able to obtain the proceeds of insurance commissions from policies which Smoker had sold prepetition. The bankruptcy court's decision to lift the stay and allow the commissions to be abandoned resolved that question for purposes of the proceeding below, and provided the basis for this appeal.

**2.** Although the bankruptcy court's Memorandum of Decision contains a section titled "Findings of Fact," this court does not consider the statements made there to be findings in reference to disputed facts but, instead, to be merely a recitation of facts that were assumed by the court to be true for purposes of its rulings—indeed, summary judgment may be granted only where there is no genuine issue of material fact. Thus, the clearly erroneous standard ordinarily applied to findings of fact has no application here.

972

### 1. Postpetition effect of Hill's interest in the commissions

■ In order to determine the propriety of the bankruptcy court's decision that the insurance commissions purportedly assigned by the debtor prior to the petition date and payable postpetition remain subject to Hill's perfected security interest, it is necessary to begin by looking to the relevant statutory provision. Section 552 of the Bankruptcy Code provides as follows:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b)(1) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, or profits of such property, then such security interest extends to such proceeds, product, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

.    .    .    .    .

11 U.S.C. § 552 (1994). Section 552(a) is intended to permit the debtor to gather into his estate as much property as possible to satisfy the claims of all creditors. *Philip Morris Capital Corp. v. Bering Trader, Inc. (In re Bering Trader, Inc.),* 944 F.2d 500, 502 (9th Cir.1991). Section 552(b), on the other hand, provides a narrow exception to the general rule of § 552(a) by balancing the Bankruptcy Code's interest in freeing the debtor from prepetition obligations against a secured creditor's right to maintain a bargained-for interest in specific items of collateral such as "proceeds, product, offspring, or profits" acquired by the debtor after the petition has been filed. *See id.*

■ It is well settled that state law is the "applicable nonbankruptcy law" which governs the priority or perfection of a creditor's interest in proceeds acquired postpetition by the debtor. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *In re Chaseley's Foods, Inc.,* 726 F.2d 303, 304–05 (7th Cir.1984). Because the state of Indiana was the place of the parties' contracts and dealings, the law of Indiana governs the determination of the nature of Hill's interest in the insurance commissions.

■ The right to receive insurance commissions payable by an insurer is an "account" under Indiana law. *See* IND.CODE § 26–1–9–106 (1993) (defining an account as "any right to payment for goods sold ... or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance"). A security interest in an account is perfected by filing a financing statement, *see* IND.CODE § 26–1–9–302(1) (1993), and it is undisputed here that Hill's security interest in Smoker's commissions was properly perfected when the corporation filed its UCC–1 financing statements with the Elkhart County Recorder and the Indiana Secretary of State.

■ Although the title of the Collateral Assignment and that document's use of the phrase "irrevocable collateral assignment" suggest that Smoker unconditionally assigned to Hill the right to receive the insurance commissions, a closer examination reveals otherwise. In Indiana, "[a]n assignment is a transfer which confers a complete and present right in a subject matter to the assignee." *Brown v. Indiana Nat'l Bank,* 476 N.E.2d 888, 894 (Ind.Ct.App.1985) (citation omitted). To determine whether a valid assignment has been made, a court must look to the purported assignor's intent. *Id.* ("A written agreement assigning a subject matter must manifest the assignor's intent to transfer the subject matter clearly and unconditionally to the assignee."); *see also Indiana State Dep't of Pub. Welfare v. Foster,* 542 N.E.2d 234, 236 (Ind.Ct.App.1989).

■ The Collateral Assignment clearly manifests Smoker's intent to grant Hill a *conditional* assignment of his right, title, and

interest in the commissions to secure payment of his obligations under the Settlement Agreement. *See* Bankr.Mem. of Decision (May 1, 1996) at 10 (quoting Exh. A to Stipulation of Facts at 2–3). First, the Collateral Assignment provides for the assignment of Smoker's right to receive the commissions only "until Smoker has fully paid and discharged all of his obligations and indebtedness set forth in the Agreement." *Id.* (quoting Exh. B. to Stipulation of Facts at 2). In addition, the terms of the Collateral Assignment allow Hill to provide notice of the Collateral Assignment to insurance companies (requiring them to pay commissions to Hill rather than Smoker) only upon Smoker's default as to his payment obligations under the Agreement. *Id.* (quoting Exh. B. to Stipulation of Facts at 1–2). Thus, the Collateral Assignment was not an outright assignment of the right to receive the commissions.

Under Indiana law, an agreement which *conditionally* transfers ownership rights to a creditor and permits the creditor to exercise its right to possession only upon a default is a security agreement—not an outright assignment. *Brown,* 476 N.E.2d at 892; *see* IND.CODE § 26–1–1–201(37) (1993) (A security interest created by such an agreement is "an interest in personal property or fixtures which secures payment or performance of an obligation"). "Where the debtor defaults on the obligation owed, the secured party may take possession of the collateral put up by the debtor and thereafter dispose of it by public or private sale. The proceeds are used to satisfy the indebtedness." *Brown,* 476 N.E.2d at 892 (citing IND.CODE §§ 26–1–9–503, 9–504).

Section 552(a) of the Bankruptcy Code states the general rule that a prepetition security interest does not extend to property acquired by the estate after the filing of the bankruptcy petition. The exception to this general rule, found in § 552(b), applies to proceeds, product, offspring, or profits of encumbered property acquired postpetition if (1) the parties entered into a security agreement before the bankruptcy petition was filed; *and* (2) the security interest extends to prepetition property of the debtor and to proceeds, product, offspring, or profits of such property. Thus, while creditors ordinarily may not reach property of the debtor

acquired postpetition, § 552(b) provides an exception if the creditor can demonstrate a connection between prepetition and postpetition property.

In the present case, the bankruptcy court determined that while the insurance commissions are postpetition property of the debtors' estate, they nonetheless fall within the exception set forth in § 552(b) since they constitute proceeds or profits of contractual rights (property) that Smoker acquired prior to filing the debtors' petition. Although the debtors argued in the bankruptcy court proceeding that a decision to lift the stay would effectively give Hill a security interest in their future income (and that such an interest cannot give rise to a lien under the Bankruptcy Code), the bankruptcy court concluded that Indiana law specifically excepts the granting of a security interest in insurance commissions from the general rule that an assignment of wages is invalid and unenforceable.

On appeal, the debtors apparently do not dispute the bankruptcy court's finding that the insurance commissions constitute proceeds or profits of contractual rights acquired prior to filing their Chapter 13 petition. However, they renew their argument from the bankruptcy proceeding that the exception in § 552(b) is inapplicable since a security interest in future income cannot give rise to a lien within the meaning of the Bankruptcy Code.

It is the general rule that the assignment of future wages as security for a present debt does not constitute a lien within the meaning of the Bankruptcy Code. In *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), the Supreme Court of the United States stated that

[t]he earning power of an individual is the power to create property; but it is not translated into property within the meaning of the Bankruptcy Act until it has brought earnings into existence. An adjudication of bankruptcy, followed by a discharge, releases a debtor from all previously incurred debts, with certain exceptions not pertinent here; and it logically cannot be supposed that the act nevertheless intended to keep such debts alive for

**974**

the purpose of permitting the creation of an enforceable lien upon a subject not existent when the bankruptcy became effective or even arising from, or connected with, preexisting property, but brought into being solely as the fruit of the subsequent labor of the bankrupt.

*Local Loan,* 292 U.S. at 243, 54 S.Ct. at 698–99. More recently, a number of lower courts have applied the rule in *Local Loan* to hold that an assignment of future earnings does not create a lien within the meaning of the present Bankruptcy Code. *See, e.g., In re Miranda Soto,* 667 F.2d 235 (1st Cir.1981); *In re Rumker,* 184 B.R. 621 (Bankr.S.D.Ga. 1995); *In re Flor,* 166 B.R. 512 (Bankr. D.Conn.1994); *Trust Co. Bank v. Walker (In re Walker),* 35 B.R. 237 (Bankr.N.D.Ga.1983).

It is beyond question that in enacting § 552, Congress sought to preserve the "fresh start" policy so eloquently stated by the Supreme Court in *Local Loan* by requiring that only security interests in after-acquired property "arising from, or connected with, preexisting property" be preserved in bankruptcy. *Local Loan,* 292 U.S. at 243, 54 S.Ct. at 699. Indeed, any analysis of the "fresh start" provisions of the present Bankruptcy Code would be incomplete without reference to the Supreme Court case which firmly established the concept of the "fresh start" in modern bankruptcy jurisprudence.

■ However, as discussed above, the bankruptcy court based its decision in the present case on a recently enacted state law provision which holds that insurance commissions are not subject to the general state law prohibition on the assignment of wages: "An assignment or pledge of, or a grant of a security interest in, a contractual right of a person to receive commissions payable directly or indirectly by an insurer (as defined in IC 27–1–2–3) does not constitute an assignment of wages subject to this chapter." IND.CODE § 22–2–7–1(c) (1993). The aforementioned provision took effect on March 18, 1993, before Hill perfected its security interest in the insurance commissions on April 19, 1993. Thus, the validity of the Smokers' appeal turns on the question of whether Indiana law is contrary to federal bankruptcy law. *See Ocasek v. Manville Corp. Asbestos Disease Compensation Fund,* 956 F.2d 152, 154 (7th Cir.1992).

■ When interpreting the Bankruptcy Code, as with any other statute, a court must look first to the language of the statute. *United States. v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). The constitutional authority of Congress under Article I, Section 8, "[t]o establish ... uniform Laws on the subject of Bankruptcies throughout the United States" clearly would encompass a federal statutory provision defining the precise extent to which postpetition proceeds or profits of the debtor's prepetition property remain subject to a perfected security interest. *See Stellwagen v. Clum,* 245 U.S. 605, 613, 38 S.Ct. 215, 217, 62 L.Ed. 507 (1918) (noting that pursuant to Congress's constitutional rulemaking authority, state laws are suspended only to the extent of actual conflict with federal bankruptcy law).

But Congress has not chosen to exercise its power to fashion such an all-encompassing rule: Section 552(b) of the Bankruptcy Code states that a security interest will extend to "proceeds, product, offspring, or profits" of property acquired prepetition "to the extent provided by such security agreement *and by applicable nonbankruptcy law.*" 11 U.S.C. § 552(b)(1). Thus, Congress appears to have been content with looking to state law for the final determination as to the extent of such property interests. Indeed, the United States Court of Appeals for the Seventh Circuit has acknowledged "that the Bankruptcy Code was written in the shadow of state law and ... Congress intended state law to fill the interstices." *In re Estate of Medcare HMO,* 998 F.2d 436, 441 (7th Cir.1993) (citing *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979)).

Therefore, because Congress has expressly provided in § 552(b) for state law limitation of the extent to which such profits and proceeds remain subject to a prepetition security interest, it cannot be stated, much less found, that Indiana's law excepting insurance commissions from the general rule prohibiting the assignment of future wages "stands 'as an obstacle to the accomplishment and execution of the full purposes and objective of Congress.'" *See California Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 281, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987) (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61

S.Ct. 399, 404, 85 L.Ed. 581 (1941)). Accordingly, the court finds that the bankruptcy court did not err in holding that the commissions which became payable to Smoker after the filing of the debtors' Chapter 13 petition remain subject to Hill's perfected security interest pursuant to 11 U.S.C. § 552(b)(1). Moreover, this court cannot disagree with the bankruptcy judge's conclusion that the equities of the case do not warrant altering the extent of Hill's security interest.

## 2. Relief from the automatic stay and abandonment of the commissions

The bankruptcy court lifted the automatic stay pursuant to 11 U.S.C. § 362(d)(1), which provides as follows:

> **(d)** On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > **(1)** for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d)(1) (1994). The bankruptcy court determined that pursuant to 11 U.S.C. § 362(g), Hill & Associates, Inc., had carried its burden of showing that the debtors had no equity in the property by demonstrating a factual and legal basis for Hill's continued security interest in the commissions pursuant to 11 U.S.C. § 552(b). The court concluded that the debtors, on the other hand, had failed to show that Hill's security interest would be adequately protected during the pendency of the Chapter 13 proceeding.

▇▇▇ The debtors argue that the bankruptcy court erred by lifting the stay because "[t]he commissions of the Debtor are absolutely necessary for an effective reorganization." Appellants' Brief in Support of Appeal at 8. However, the debtors confuse the provision under which the bankruptcy court granted the motion to lift the stay. The phrase "necessary for an effective reorganization" refers to an alternate ground for relief from the stay pursuant to § 362(d)(2). Because Sections 362(d)(1) and 362(d)(2) are phrased in the disjunctive, relief from the automatic stay can be granted under either provision. *In re Kerns*, 111 B.R. 777, 785

(S.D.Ind.1990); *see Production Credit Ass'n of the Midlands v. Wieseler (In re Wieseler)*, 934 F.2d 965, 968 (8th Cir.1991).

▇▇▇ Here, the bankruptcy court based its decision on § 362(d)(1), concluding that relief should be granted "for cause" since "the debtors have failed to show that Hill's security interest will be adequately protected during the pendency of this Chapter 13 proceeding." Bankr.Mem. of Decision (May 1, 1996) at 13. Since, on the basis of the record on appeal, the bankruptcy court's decision to lift the stay under § 362(d)(1) cannot be faulted, it is unnecessary to decide whether the commissions were "necessary to an effective reorganization" under § 362(d)(2).

Finally, the debtors contend that it was error for the bankruptcy court to find that the commissions should be abandoned pursuant to 11 U.S.C. § 554(b). Specifically, the debtors argue that the commissions are of significant value to the estate, in that they are the debtors' primary source of income, and that the bankruptcy judge erred in concluding that the commissions are burdensome to the debtors' estate.

▇▇▇ Section 554(b) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b) (1994). Thus, a party seeking an order of abandonment must present a *prima facie* case that the property is either burdensome to the estate or of inconsequential value or benefit to the estate. *In re Masters*, 104 B.R. 83, 84 (Bankr.S.D.Ind.1989) (citing *In re Paolella*, 79 B.R. 607, 610 (Bankr.E.D.Pa. 1987)).

▇▇▇ The record on appeal shows that appellees Hill, John Alden Insurance Company, and Sarah Christensen have asserted causes of action relating to the commissions which Smoker conditionally assigned to Hill. The bankruptcy court determined that the commissions themselves have become burdensome to the estate by virtue of having generated litigation in which the debtors likely cannot afford to participate. In addition, the court concluded that since the commis-

sions described in the Collateral Assignment are fully encumbered by Hill's security interest, they are of inconsequential value and benefit to the debtors' estate and should be abandoned pursuant to 11 U.S.C. § 554(b).

The bankruptcy court's decision ordering the commissions to be abandoned is adequately supported by the record before this court. Accordingly, that decision will be affirmed as well.

### CONCLUSION

For the reasons described above, the bankruptcy court's decision granting Hill's motion for summary judgment and denying the debtors' cross-motion for summary judgment is ·AFFIRMED.

**IT IS SO ORDERED.**