**In re Peter M. KIZIS and Jean F. Kizis, Debtors.**

**Franklin First Savings Bank, Movant,**

v.

**Peter M. Kizis and Jean F. Kizis, Respondents.**

**Bankruptcy No. 5-97-03234.**

United States Bankruptcy Court,
M.D. Pennsylvania,
Wilkes–Barre Division.

April 16, 1999.

Lisa M. Doran, Doran & Nowalis, Wilkes–Barre, PA, for Debtors.

Ernest A. Sposto, Jr., Rosenn, Jenkins & Greenwald, Wilkes–Barre, PA, for Movant.

1. Drafted with the assistance of Richard P. Rogers, Law Clerk.

*OPINION*[1]

JOHN J. THOMAS, Bankruptcy Judge.

This Motion calls into question the interaction between 11 U.S.C. § 552(a), § 552(b), and 13 Pa.C.S.A. § 9306(a) ("proceeds"; rights of secured party on disposition of collateral) and the terms of an executed security agreement and financing statements executed by both Debtors and the Movant Bank. The particular issue presented for resolution is whether the Bank has a perfected security interest in the male Debtor's renewal insurance commissions earned postpetition by reason of the employer's prepetition agency contract with the male Debtor. Renewal commissions are generated from the decision of a policyholder to enter into a new policy after the expiration of an existing policy (Brief of Debtors in Opposition to Motion of Franklin First Savings Bank for Relief from Automatic Stay, filed 10/20/98, at 3 (Doc. # 67).)

Mr. Kizis filed bankruptcy on October 31, 1997. The pertinent facts presented to the Court by way of a joint Stipulation of Facts can be summarized as follows. Peter Kizis is a former general agent for The Guardian Insurance Company of America. During the time of his employment, he requested and received a loan from M & T Bank, successor in interest to the Movant, Franklin First Savings Bank (hereinafter "Bank") in the original amount of One Hundred Forty Thousand Dollars ($140,000.00). The terms of this loan were set forth in a note dated March 25, 1994. On the same date, the Debtors executed a Security Agreement. Paragraph 4 of the Stipulation of Facts extracts the following language from the Security Agreement.

"Part 6: "Collateral", as used in this Security Agreement, refers to the types of property initialed by the Borrower and checked below:

X (____) SPECIFIC PROPERTY: In addition to any types of property ini-

tialed and checked above, the Collateral includes, without limitation, the following Specific Property (give all details for exact identification; if space is not sufficient, insert "SEE ATTACHED ADDENDUM" and describe Collateral on "Addendum"), together with any documents, instruments or general intangibles relating to the following Specific Property:

Guardian General Agency Renewal Account n/o Peter M. Kizis (see Exhibit "A" attached).

### EXHIBIT "A"

Assignment of all commissions including, but not limited to, overriding commissions, renewals, collection fees, expense reimbursement allowances and any other form of compensation or payment as described in General Agency Agreement dated January 1, 1986, between The Guardian Life Insurance Company of America and Peter M. Kizis and any amendments thereto.

All accounts receivable, inventory and general intangibles of the Debtor whether now existing or hereafter created or acquired together with the proceeds thereof located at the Debtor's present place of business or any future place of business or any future location."

"1. GRANT OF SECURITY INTEREST. In consideration of, and as security for, the liabilities of the Borrower to the Bank described below and intending to be legally bound, the Borrower grants the Bank a security interest in the Collateral, together with all present and future documents, general intangibles and instruments of every kind and nature whatsoever, all present and future products of Collateral and all present and future Proceeds of Collateral (including but not limited to all leases, rents, issues, profits, credits, rebates, increases, replacements of and additions and accessions to the Collateral and all cash, non-cash and insurance proceeds). This right to Proceeds does not, and

shall not be interpreted to, constitute authorization or consent by the Bank to any disposition of any Collateral. This Security Agreement and the security interest granted herein shall stand as general and continuing security for all liabilities and may be retained by the Bank until all Liabilities have been satisfied in full; provided, however, that this Security Agreement shall not be rendered void by the fact that no Liabilities or commitment by the bank to make advances to the Borrower exists as of any particular date, but shall continue in full force and effect until the filing of a termination statement signed by the Bank with respect to all the Collateral.

As additional security for the Liabilities, the Borrower conveys, assigns and grants a security interest to the Bank in and to all present and future files, books, ledgers, records, bills, invoices, receipts, deeds, certificates or documents of ownership, warranties, bills of sale and all other data and data storage systems and media pertaining to any of the Collateral."

Prior to the March 25, 1994 date, Mr. Kizis executed an assignment of new and renewal insurance commissions to the Bank. Financing statements were filed on April 4, 1994. He was an agent for The Guardian from approximately January of 1986 through February of 1997 and has had no association with his former employer since the filing of the bankruptcy petition. As of the date of the filing of the Stipulation of Facts, he was neither selling insurance policies nor performing any other services on behalf of Guardian. All of the commissions and renewal commissions at issue result from the sale of insurance policies prior to the filing of the Debtors' bankruptcy case. Mr. Kizis is not required to perform any further services to receive renewal commissions from this former employer. Schedule B filed by the Debtors indicates there is approximately Five Hundred Twenty Thousand Dollars ($520,000.00) owed by Guardian to Mr.

Kizis. There is a prepetition default under the note and related loan documents as of February 24, 1998. The total indebtedness under the note is Sixty–One Thousand Twenty–Three Dollars and Six Cents ($61,023.06) together with interest, legal fees, and costs, the total default under the note of Twenty–Six Thousand Eight Hundred Eighty–Five Dollars and Twenty–Four Cents ($26,885.24).

The positions of the parties can be simply and succinctly stated. The Debtors argue the instant Motion is governed by § 552 [2] of the Bankruptcy Code which cuts off any security interest the Bank had in any of the property which the Debtors acquired postpetition unless the Bank can fit into one of the exceptions contained in § 552(b). The Debtors' argument continues that because the Security Agreement did not take into account product, offspring, or profits of existing secured assets, the only way the collateral at issue falls within the exception in § 552(b) of the Bankruptcy Code is if it is proceeds under 13 Pa.C.S.A. § 9306. Further, because the collateral does not come within the definition of proceeds, the Bank has no claim to the postpetition renewal insurance commissions. The Debtors rely primarily on the case of *Froid v. F.D.I.C.*, 109 B.R. 481 (Bankr.M.D.Fla.1989).

The Bank responds that the Security Agreement grants a security interest to the Bank in the renewal insurance commissions and all present and future proceeds, products, and profits thereof. In support, the Bank directs our attention to Exhibit "A" of the Security Agreement which identifies the collateral as "assignment of all commissions including, but not limited to, overriding commissions, *renewals*, and collection fee expense reimbursement allowance and any other *form of compensation or payment* as described in the general agency agreement dated January 1, 1986, between The Guardian Insurance Company of America and Peter M. Kizis and any amendments thereto." (Emphasis added by Bank). The Bank relies primarily on the case of *Smoker v. Hill & Associates, Inc.*, 204 B.R. 966 (N.D.Ind.1997) for the proposition that a creditor has a perfected security interest in insurance commissions and proceeds acquired postpetition despite the application of 11 U.S.C. § 552(b)(1). The Bank characterizes the *Froid* case as confusing and void of explanation for its rationale. Furthermore, under 13 Pa.C.S.A. § 9306(a), renewal commissions are proceeds since they are "whatever is received upon the ... collection or other disposition of collateral proceeds."

Before proceeding, it is important to note that the Debtors did not attack the propriety of the documents including the Security Agreement, financing statement, and assignment of commissions between the agency (Guardian), assignee (Bank), and the assignor (Mr. Kizis). In other words, perfection issues were not raised by the Debtors. Additionally, both parties agree that the renewal commissions are property of the estate under § 541 of the Bankruptcy Code. The Court agrees.

2. **§ 552. Postpetition effect of security interest.**

   (a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

   (b)(1) Except as provided in section 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, or profits of such property, then such security interest extends to such proceeds, product, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

See *Froid* and *In re Rankin,* 102 B.R. 439 (Bankr.W.D.Pa.1989).

Cutting through the fat of this Motion and simplifying the issue even more so than the parties have, the Court essentially sees the issue as determining what collateral is subject to the Security Agreement in question.

■ Section 552(a) provides the general rule that a prepetition security interest does not reach property acquired by the estate or debtor postpetition. "Section 552(b) sets forth an exception, allowing postpetition 'proceeds, product, offspring, rents, or profits' of the collateral to be covered only if the security agreement expressly provides for an interest in such property, and the interest has been perfected under 'applicable nonbankruptcy law'." *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

■ State law determines whether an interest has been perfected in certain collateral. *Ohio Casualty Group of Insurance Companies v. Professional Insurance Management,* 130 F.3d 1122 (3d Cir.1997). The Debtors question whether the renewal commissions fall within the definition of "proceeds" under the Pennsylvania Uniform Commercial Code. 13 Pa.C.S.A. § 9306(a) provides the following:

(a) **Definition of "proceeds"**— "Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit accounts and the like are "cash proceeds." All other proceeds are "noncash proceeds."

The Bank describes its collateral as insurance renewal commissions and proceeds, products, and profits of those renewal commissions. The Debtors claim that the language of the financing agreement only mentions proceeds, but not product, offspring, or profits. The Court reviews the description of the collateral differently from the litigants. The issue is whether the collateral subject to the security interest is the commissions themselves or the right of Mr. Kizis to acquire future commissions under its agency agreement with its former employer. See *Ohio Casualty Group of Insurance Companies v. Professional Insurance Management,* 130 F.3d at 1130.

■ This position by the Bank that the renewal commissions constitute proceeds acquired by the estate postpetition is very similar to that espoused by the F.D.I.C. in the *Froid* case. Contrary to the characterization by the Bank of the *Froid* decision as being confusing and lacking rationale, the Court finds the *Froid* case to be instructive, clear and succinct and agrees with its reasoning. The *Froid* Court looked to the security interest granted by the debtor to the F.D.I.C. and found it was granted in renewal commissions only and not to some other collateral from which the renewal commissions derived. The reasoning followed that because the commissions were not derived from a prepetition collateral subject to the security interest of the F.D.I.C., then the commissions could not be classified as proceeds of the collateral. "To come within the exception immunizing proceeds from the impact of § 552(a) there must be a collateral in which the party has a valid enforceable security interest which collateral produced proceeds through liquidation of the collateral itself. Neither do the renewal commissions qualify to be products, offsprings, rents or profits of a collateral encumbered by the security interest claimed by the secured party". *Froid,* 109 B.R. at 484. The *Smoker* case relied upon by the Bank affirmed findings of the bankruptcy court that the security interest extended to the contractual rights of the debtor to receive the insurance commissions. The *Smoker* Court reasoned that the contract was a

prepetition contract and, therefore, the commissions earned postpetition were proceeds or profits of the contractual rights acquired prior to the filing of the petition.

I have reviewed the language of the Security Agreement, financing statements, and assignment of commissions and have determined that the collateral subject to the security interest is in the renewal commissions themselves and not in the Debtor's prepetition contractual right to receive those commissions as in the *Smoker* case. The language found in Exhibit "A" of both the Security Agreement and the financing statements is unambiguous and contemplates only commissions as collateral. Although Exhibit "A" references commissions, fees, and rights to payment as referenced in the general agency agreement dated January 1, 1986 between The Guardian Insurance Company of America and Peter M. Kizis and any amendments thereto, such agreement was not made a part of this record.

Based upon the foregoing, the Court finds support for the Debtors' position in both the case law and all the supporting documents filed in the record that the Bank's security interest in renewal commissions was cut off by the filing of the bankruptcy as contemplated by 11 U.S.C. § 552(a). The exceptions as contained in subsection 552(b) do not apply. The Bank's Motion to Lift the Stay under 11 U.S.C. § 362(a) so that it may enforce any interest it has in the collateral subject to the Motion in accordance with state law is hereby denied in its entirety.

An Order will follow.