**In re Robert GOLDE, Debtor.**

**Louis Yoppolo, Trustee, Plaintiff,**

**v.**

**Robert Golde, et al., Defendant.**

**No. 99–3192, 98–34647.**

United States Bankruptcy Court, N.D. Ohio.

Aug. 9, 2000.

Louis J. Yoppolo, Toledo, OH, pro se.

Rick L. Risner, Toledo, OH, pro se.

Philip F. Brown, Columbus, OH, for PA Life Insurance Co.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court upon the Plaintiff's Motion for Summary Judgment, Memorandum in Support, and Memorandum in Opposition to the Defendants' Motion for Summary Judgment; and the Defendants' Motion for Summary Judgment, and Memorandum in Support. This Court has now had the opportunity to review the arguments of Counsel, the exhibits, as well as the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the Plaintiff's Motion for Summary Judgment should be Denied; that Defendants' Motion for Summary Judgment should be Denied; and that this matter should be set for Trial.

### FACTS

The Debtor/Defendant, Robert S. Golde (hereinafter referred to as the Defendant), is, and has been for more than fifteen (15) years, an independent contractor for the Pennsylvania Life Insurance Company (hereinafter referred to as "PLIC"). His primary responsibility with PLIC is selling insurance to individuals within a territory encompassing parts of Ohio and Michigan. Various agreements (hereinafter referred to as simply the "Agreements"), govern the relationship between the Defendant and PLIC, and pursuant to these Agreements, the Defendant is afforded two separate compensation schedules. One scheme allows the Defendant to receive compensation in the form of commissions, paid to him as a percentage of profits made by PLIC from the Defendant's services. The second scheme allows the Defendant to receive additional compensation if current customers of PLIC renew their insurance contracts. These "renewal commissions," as they are called, are at the center of the dispute between the Parties.

On October 28, 1998, the Defendant along with his wife filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. Following the initial meeting of creditors on December 18, 1998, the Trustee filed a motion to have the Defendant surrender to the Trustee any and all renewal commissions derived from previously sold insurance policies. On January 6, 1999, the Trustee's motion was granted due to the Defendant's failure to timely respond to the Trustee's motion. Thereafter, an Order for the Turnover of the Defendant's insurance renewal commissions was entered by the Court. In response, the Defendant changed his legal counsel and, amid confusion and several interim events, filed a motion to stay enforcement of the Turnover Order. The Court then, after considering the issues presented by the Defendant, allowed the issue to continue pending a complaint filed by the Trustee for turnover. On September 22, 1999, the Trustee filed his Complaint for turnover of the Defendant's insurance renewal commissions, and thereafter filed a Motion for Summary Judgment. In response, the Defendant also filed a Motion for Summary Judgement against the Trustee's Complaint for Turnover.

## LAW

Section 541 of the Bankruptcy Code provides in pertinent part:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all of the following property, where ever located and by whomever held:

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

## DISCUSSION

The overall issue presented in this case can be framed as this: Are postpetition insurance renewal commissions for insurance policies sold prepetition, property of a debtor's bankruptcy estate under § 541(a)? As this matter concerns an order to turnover property of the estate, this case is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(e).

The instant case has been brought before the Court upon the Parties' cross-motions for summary judgment. Under the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7056, a party will prevail on a motion for summary judgment when, "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). In order to prevail, the movant must demonstrate all elements of the cause of action, but once that burden is established, the opposing party must set forth specific facts showing there is a genuine issue for trial. *R.E. Cruise, Inc. v. Bruggeman*, 508 F.2d 415, 416 (6th Cir.1975); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct.

2505, 2511, 91 L.Ed.2d 202 (1986). Inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 586–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In addition, in cases such as this, where the Parties have filed cross-motions for summary judgment, the Court must consider each motion separately, since each party, as a movant for summary judgment, bears the burden to establish the nonexistence of genuine issues of material fact, and that party's entitlement to judgment as a matter of law. Thus, the fact that both parties simultaneously argue that there are no genuine factual issues does not in itself establish that a trial is unnecessary, and the fact that one party has failed to sustain its burden under Fed. R.Civ.P. 56 does not automatically entitle the opposing party to summary judgment. Wright, A. Miller, E. Cooper, 10A Federal Practice and Procedure § 2720, at 16–17 (1983).

One of the major goals of bankruptcy is to ensure that a debtor's creditors receive an equitable distribution of the debtor's nonexempt assets. To this end, when a debtor files for bankruptcy relief an estate is created which is comprised of "all legal and equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In addition, paragraph (a)(6) of § 541 further expands upon this already broad definition of estate property so that any "proceeds, product, offspring, rents or profits of or from property of the estate" become included within the scope of the debtor's bankruptcy estate. However, in order to ensure that the "fresh start" policy of the Bankruptcy Code is furthered, the breadth of § 541(a)(6) is limited so that any proceeds, product, offspring, rents or profits that are earned as the result of postpetition services, are thereafter excluded from the debtor's bankruptcy estate under § 541(a). This limitation is sometimes referred to as the "earnings exception" to property of the

estate. *See, e.g., In re Lundeen,* 207 B.R. 604, 607 (Bankr.S.D.Ind.1997). In conformance with this limitation, the Defendant has asked the Court to exclude from his estate property all the postpetition insurance renewal commissions that he has and will receive on the grounds that he has and will continue to perform postpetition services to receive such commissions.

Various courts have addressed the applicability of § 541(a)(6) to insurance renewal commissions. An examination of these cases, reveals that essentially two factual scenarios exist for issues arising under § 541(a)(6). The first scenario occurs when a debtor's interest in the insurance renewal commission is vested; meaning that all the work necessary to earn the commission has occurred prepetition. The second scenario takes place when a debtor must perform at least some postpetition services to become entitled to the insurance renewal commissions. Simply put, under this latter scenario the debtor's insurance renewal commissions have both a prepetition and postpetition component.

With regards to the first scenario, the Bankruptcy Appellate Panel for the Sixth Circuit has specifically addressed the issue and held that any commissions earned wholly prepetition, but paid postpetition, become in their entirety property of the estate. *Wicheff v. Baumgart (In re Wicheff),* 215 B.R. 839, 841–42 (6th Cir. BAP 1998). In the words of the Court, "[i]nsurance renewal commissions received postpetition are property of the estate if all of the actions required to earn the commissions were completed prepetition." *Id.* Other courts when faced with this or a similar issue have reached an identical result. *See, e.g., First Nat'l Bank of Mercer County v. Rankin (In re Rankin),* 102 B.R. 439, 441 (Bankr.W.D.Pa.1989) (finding that renewal commissions were property of the estate because "[n]o additional effort of the part of the debtor is required to earn renewal commissions."); *Kleinfeld v. F.D.I.C. (In re Froid),* 109 B.R. 481, 483 (Bankr.M.D.Fla.1989); (to the extent a

debtor's interest in insurance renewal commissions are vested, they are property of the bankruptcy estate); *Williams v. Tomer (In re Tomer),* 128 B.R. 746, 761–62 (Bankr.S.D.Ill.1991) (when postpetition services are not necessary to generate renewal commissions, such commissions are property of the estate).

In accordance with these cases, the Trustee argues, in conformity with the first scenario, that the Defendant has already performed all the work necessary to receive the renewal commissions. Thus, the Trustee asserts that this Court should order the Defendant to turnover all of the insurance renewal commissions that he has and will in the future receive. In support of this position, the Trustee calls this Court attention to various provisions of the different Agreements entered into between the Defendant and PLIC which, according to the Trustee, show that the Debtor is entitled to receive the renewal commissions from PLIC regardless of his rendition of postpetition services. In particular, the following two provisions were brought to this Court's attention:

> If this Agreement is cancelled for any cause other than your death or disability, your acting to prejudice materially the interests of [PLIC] or its affiliates, or your violation of any of its provisions, You shall receive the First Year Commissions and Renewal Commissions, if any, to which you are entitled under this Agreement. (Agent Agreement § 9(b)). If the Agreement is cancelled...after [the Defendant] has been an agent for [PLIC] for more than fifteen (15) continuous years, Agent shall receive 100% of the first year and renewal commissions which would have been payable thereunder if the Agreement had not been cancelled. (Vesting Addendum to Agreement with Agent at § 2(e)(iii)).

The Court, however, after examining the above provisions as they relate to the Agreements entered into between the Defendant and PLIC, cannot conclude, as the Trustee contends, that these provisions

give the Defendant an automatic right to receive the renewal commissions at issue in this case. For example, an examination of the first provision cited above shows that the Defendant's right to receive any insurance renewal commissions is qualified by the phrase, "if any, to which you are entitled under this Agreement." In addition, other provisions of the Defendant's Agreements with PLIC limit the application of the second provision cited above so that it only applies if the Defendant's Agreements with PLIC are not canceled for cause, a situation which if it does arise automatically results in all compensation, renewal or otherwise, being immediately terminated. (Vesting Addendum to Agreement with Agent at § 1 & 2). Furthermore, after examining the Agreements entered into between the Defendant and PLIC it seems apparent to the Court that such Agreements specifically contemplate that the Defendant will have to perform, in some instances, certain services on an on-going basis (i.e., postpetition services) in order to become entitled to receive the insurance renewal commission. For example, the Court notes that the Defendant is required under his Agreements with PLIC to use his "best efforts to provide services to customers" and to "maintain in force any business which [the Defendant] places with [PLIC] or its parent, subsidiaries, or affiliates." (Agent Agreement § 4(b)). Once more, the Defendant's failure to do these requirements may result in the Agreements between himself and PLIC being canceled for cause, which in turn terminates the Defendant's right to receive any insurance renewal commissions.(Agent Agreement § 8(b) & Vesting Addendum to Agreement with Agent at § 1). Therefore, given these considerations, it is this Court's position that the renewal commissions due to the Defendant are more akin to the situation in which such renewal commissions have both a prepetition and a postpetition component. Accordingly, the Court, in conducting the remainder of its analysis, will operate under the assumption that the postpetition earnings exception contained in § 541(a)(6) is at least to a certain extent applicable to the Debtor's insurance renewal commissions.

There presently exists what can be characterized as a split of authority as to how renewal commissions, having both prepetition and postpetition components, are to be handled for purposes of § 541(a)(6). The first group of cases, lead by the case of *In re Kervin*, 19 B.R. 190, 194 (Bankr. S.D.Ala.1982), holds that where the debtor must perform any postpetition services to become entitled to a renewal commission, that such a commission is encompassed within the earnings exception contained in § 541(a)(6), and therefore does not become property of a debtor's bankruptcy estate. *See also Cissell v. Zahneis (In re Zahneis)*, 78 B.R. 504 (Bankr.S.D.Ohio 1987) (renewal commissions were not property of the estate because of continuing contractual relationship); *In re Hodgson*, 54 B.R. 688 (Bankr.W.D.Wis.1985) (finding that renewal premiums were not property of the estate because the debtor "spends the vast majority of his time servicing old policies"); *Boyle v. Stefurak (In re Sloan)*, 32 B.R. 607 (Bankr.E.D.N.Y.1983) (holding that "[w]here a debtor derives post-petition commissions under a pre-petition contract, and such commissions are dependent upon the continued services of the debtor, they do not constitute property of the estate"); *In re Leibowitt*, 93 F.2d 333, 335 (3rd Cir.1937) (holding that renewal commissions were not property of the estate because "substantial service still must be rendered by the bankrupt in order that the compensation referred to may become payable by the insurance company"). The rationale for this approach seems to lie in the realization that a trustee cannot compel a debtor to perform his or her postpetition duties under a contract, and thus if postpetition work is done on the debtor's own initiative, the debtor should be entitled to the fruits of such labor. *See generally In re Tomer*, 128 B.R. at 761–62. However, in *Towers v. Wu (In re Wu)*, the

court criticized this approach as being to "all or nothing," and held that:

> The proper analysis... is to first determine whether any postpetition services are necessary to obtaining the payments at issue. If not, the payments are entirely rooted in the pre-bankruptcy past, and the payments will be included in the estate. If some postpetition services are necessary, then courts must determine the extent to which the payments are attributable to the postpetition services and the extent to which the payments are attributable to prepetition services. That portion of the payments allocable to postpetition services will not be property of the estate. That portion of the payments allocable to prepetition services or property will be property of the estate.

173 B.R. 411, 414–15 (9th Cir. BAP 1994) (internal quotations and citations omitted).

■ Upon considering each of the above approaches, the Court finds that the holding contained in *In re Wu* is more in line with the distinction the Bankruptcy Code makes between prepetition and postpetition property. In particular, it is this Court's position that merely because a debtor has to perform a postpetition service to become entitled to an item of property, does not thereby mean that such property does not have prepetition attributes which become property of the estate under § 541(a). Stated differently, payments for prepetition services are not excludable from the estate simply because postpetition services are required to receive payment. *See Jess v. Carey (In re Jess)*, 169 F.3d 1204, 1207 (9th Cir.1999). Moreover, in this Court's opinion, apportioning property between its prepetition and postpetition components strikes the proper balance of assuring that any prepetition resources that a debtor has available are used to pay his or her creditors, while at the same time ensuring that the "fresh start" policy underlying the Bankruptcy Code is furthered. This approach is also in accord with other decisions this Court has issued. For example, just recently this Court held that income tax overpayments and profit-sharing checks must, for purposes of § 541(a), be apportioned, prorata, based upon the debtor's prepetition earnings. *In re Vinson,* Case No. 99–31808 (May 25, 2000); *In re Booth,* Case No. 99–33854 (June 30, 2000). However, unlike income tax refunds and profit-sharing checks, which under normal circumstances can be apportioned with relative ease, it is very difficult to apportion with any degree of certainty a debtor's interest in an insurance renewal commission between its prepetition and postpetition components. For instance, simply apportioning a debtor's renewal commissions based upon the total number of hours a debtor spends attending to an insurance policy does not take into consideration the true value of the debtor's services. In particular, services performed postpetition, such as attending to claims of the insured or simply answering questions from the insured, can be of a greater value than some prepetition services, as without such postpetition services an insured may simply cancel his or her policy, thus eliminating entirely all future renewal commissions. Another problem with apportioning insurance renewal commissions between their prepetition and postpetition components is that there is no way of knowing with certainty how much time a debtor will have to spend in the future attending to the insurance policies, thus making any apportionment by its very nature speculative.

■ Notwithstanding these concerns, a court when presented with sufficient and competent evidence can make a reasonable and fair assessment as to how a debtor's insurance renewal commissions should be apportioned. In this regard, the Defendant has presented to the Court an affidavit which states that:

> -That the terms of both my contracts with PLIC require me to perform certain services and acts, which I have

faithfully done in fulfilling the terms of my contracts.

-That my performance of the services required under the contracts has allowed me to continue receiving my compensation from PLIC.

-That the time spent in performing the services required under the contracts with PLIC is substantial.

Such statements, if true, are definitely supportive of the Defendant's position that he should be entitled to retain most (if not all) of his insurance renewal commissions. The Trustee, however, has contested the veracity of these statements, and in this respect, the Court agrees with the Trustee that the Defendant's statements should be subject to cross-examination. That is, the Court finds that there exist genuine issues of material fact in this case regarding what portion of the Debtor's insurance renewal commissions are attributable to postpetition services, and thereby excluded from property of the estate under the earnings exception contained in § 541(a)(6). Consequently, as this matter is before the Court upon the Parties' Cross-Motions for Summary Judgment, each motion must be Denied.

In summary, the Court holds that the insurance renewal commissions that the Debtor receives from PLIC require the performance of at least some postpetition services. Thus, in conformance with the holding in *In re Wu,* the Debtor is entitled to keep that portion of the renewal commissions which are allocable to the postpetition services performed by the Debtor. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Motion for Summary Judgment submitted by the Plaintiff, Louis Yoppolo, Trustee, be, and is hereby, DENIED; and that the Motion for Summary Judgment submitted by the Defen-dants, Robert S. Golde and Nancy H. Golde, be, and is hereby, DENIED.

It is **FURTHER ORDERED** that this matter be, and is hereby, set for a Trial on Thursday, October 19, 2000, at 10:00 A.M., in Courtroom No. 1, Room 119, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio.

It is **FURTHER ORDERED** that on, or before Monday, October 9, 2000, the Parties exchange and file with the Court pretrial memoranda, lists of witnesses, lists of exhibits, and stipulations.

It is **FURTHER ORDERED** that the failure to file any of the above items may result in the Trial being continued, witnesses or exhibits not being introduced into Trial, or sanctions being imposed by the Court.