**In re Stephen WIENER, Debtor.**

No. 97–33742.

United States Bankruptcy Court,
N.D. Ohio.

Nov. 5, 2001.

H. Buswell Roberts, Jr., Toledo, OH, for debtor.

Louis J. Yoppolo, Toledo, OH, trustee.

John J. Hunter, Sr., Toledo, OH, trustee.

Elizabeth A. Vaughan, Toledo, OH, trustee.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

The instant cause is brought before this Court upon the Trustee's objection to the Amended Proof of Claim submitted by the GRC Group (hereinafter referred to as "GRC"). The specific basis for the Trustee's objection is the assertion by GRC that it is a secured creditor with respect to certain insurance renewal commission which were included within the scope of the Debtor's bankruptcy estate. On this matter, the Parties, through numerous supporting legal memoranda, raised three issues for this Court to resolve: (1) Did GRC obtain an enforceable lien in the Debtor's insurance renewal commissions by filing, prepetition, a complaint for a creditor's bill pursuant to O.R.C. § 2333.01; (2) if GRC does have a valid lien against the Debtor's insurance renewal commission, does the Consumer Protection Act (15 U.S.C. § 1601 et seq.) apply so as to limit GRC's ability to recover against this asset; and (3) finally, if a valid lien exists, is the Trustee entitled to fees and expenses totaling Eleven Thousand Four Hundred Eighteen and 75/100 ($11,418.75) dollars under 11 U.S.C. § 506(c). The facts and circumstances which give rise to these issues are briefly as follows:

In late 1995, the GRC Group obtained a judgment against the Debtor in the amount of Five Hundred Twenty-three Thousand Three Hundred Twelve dollars ($523,312.00). Shortly thereafter, in an attempt to satisfy this judgment, GRC caused to be issued a writ of execution against the Debtor's property. The property received therefrom, however, was insufficient to satisfy GRC's judgment. As a result, GRC also filed a complaint for a creditor's bill pursuant to O.R.C. § 2333.01, in which it sought to attach those insurance renewal commissions due to the Debtor from Northwestern Mutual Life Insurance Company. In this complaint, GRC stated, inter alia, that:

> The plaintiffs have issued a[sic] execution against the defendant Stephen H. Wiener but that the execution has not provided sufficient assets with which to satisfy plaintiff's judgment.

The Debtor, however, in his Answer to GRC's complaint, specifically denied this averment; this matter was then stayed by the Debtor's intervening bankruptcy which was filed on September 15, 1997.

After the commencement of the Debtor's bankruptcy case, the Trustee issued a notice to all creditors to file a proof of claim.

In accordance therewith, GRC, on May 26, 1998, submitted a timely proof of claim as an unsecured creditor in the amount of Five Hundred Twenty-three Thousand Three Hundred Twelve dollars ($523.312.00). Sometime following this event, the Trustee, after investigating the financial affairs of the Debtor, determined that the only possible asset available for recovery was the interest the Debtor maintained in the insurance renewal commission due from Northwestern Mutual Life Insurance Company; to recover this asset the Trustee brought an adversary proceeding against Northwestern Mutual Life Insurance Company (Case No. 00–3026). The Trustee then, in considering the contingent nature of insurance renewal commissions, determined the present value of this asset to be Twenty-five Thousand dollars ($25,000.00), and thereafter filed a Notice of Intent to Sell this asset Free and Clear of Liens. GRC, however, filed an Objection thereto, asserting that the renewal commission were worth considerably more—specifically, between One Hundred Thousand dollars ($100,000.00) and One Hundred Fifty Thousand dollars ($150,-000.00).

On March 1, 2001, the Court held a hearing on GRC's Objection to the Trustee's intent to sell the Debtor's insurance renewal commission. After hearing the Parties' arguments, the Court permitted GRC to amend its proof of claim so as to assert a security interest in the Debtor's renewal commissions.[1] On April 11, 2001, GRC filed its amended proof of claim—against which the Trustee objects—asserting that it was a fully secured creditor with respect to the Twenty-five Thousand dollar ($25,000.00) value attached to the Debtor's renewal commissions.

## LEGAL DISCUSSION

Determinations as to the validity, extent, or priority of liens in a bankruptcy case are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(K). Thus, this case is a core proceeding.

■ The central issues raised by the Trustee's objection to the GRC's amended proof of claim is whether GRC obtained an enforceable lien in the Debtor's insurance renewal commissions by bringing, prior to the filing of the Debtor's bankruptcy petition, a complaint for a creditor's bill under O.R.C. § 2333.01. As property rights, including the existence of liens, are generally determined by reference to applicable state law, this Court will look to the law of Ohio in addressing this issue. *Butner v. United States*, 440 U.S. 48, 55–57, 99 S.Ct. 914, 918–19, 59 L.Ed.2d 136 (1979) (existence of security interest resolved by reference to state law).

■ Under Ohio law, a Creditor's Bill is a device which permits a judgment-creditor to reach a debtor's equitable assets which, for reasons of uncertainties respecting title or valuation, cannot be effectively subjected under the ordinary legal process of execution by way of judgment liens, attachment or garnishment. *Hoover v. Professional & Executive Mtg. Corp.*, 21 Ohio App.3d 223, 225, 486 N.E.2d 1285, 1287 (1985). For purposes of Ohio law, a creditor's bill is statutorily provided for in O.R.C. § 2333.01 which states that:

---

1. In addition, the Court, given GRC's insistence that the renewal commission were worth considerably more than Twenty-five Thousand dollars ($25,000.00), found that GRC should be given the opportunity to submit to the Trustee a bid on the renewal commissions so as to permit GRC to recover the purported additional value in this asset. GRC, however, apparently after reconsidering its position, declined to bid on this asset within the time frame allowed by the Court.

When a judgment debtor does not have sufficient personal or real property subject to levy on execution to satisfy the judgment, any equitable interest which he has in real estate as mortgagor, mortgagee, or otherwise, or any interest he has in a banking, turnpike, bridge, or other joint-stock company, or in a money contract, claim, or chose in action, due or to become due to him, or in a judgment or order, or money, goods, or effects which he has in the possession of any person or body politic or corporate, shall be subject to the payment of the judgment by action.

It is well-established that a suit brought under this section creates a lien, for the benefit of the judgment-creditor, on all of the debtor's equitable assets. *Federal Deposit Insurance Corp. v. Willoughby*, 19 Ohio App.3d 51, 55, 482 N.E.2d 1267, 1272 (1984).

The Trustee, although not controverting this rule, argues that GRC did not obtain a lien on the Debtor's equitable assets—i.e., the Debtor's insurance renewal commissions—because of a procedural defect with GRC's complaint on the creditor's bill. Specifically, the Trustee stated to the Court:

> The filing of a creditor's bill actions pursuant to RC 2333.01 secures a plaintiff's lien on the defendant's assets that are the subject of the action, as long as the plaintiff establishes the prerequisite that the defendant does not possess real or personal property that is subject to levy on execution sufficient to satisfy the judgment. GRC Group did not establish this prerequisite prior to the bankruptcy filing. Because the Debtor denied the averments of GRC Group's complaint, the burden of proof was then placed on GRG [sic] Group to show that the Debtor did not possess real or personal prop-

erty upon which they could levy to satisfy its judgment.

(Trustee's Response dated March 21, 2001, to GRC's Objection to Trustee's Notice of Intent to Sell Free and Clear of Liens, at pgs. 2–3). Thus, given this statement as it applies to the particular facts of this case, the position of the Trustee can be restated as this: When a creditor's bill is at issue, a fatal defect will exist with any lien which arises therefrom when that creditor, after being confronted with a debtor's denial, is prevented from establishing that the debtor lacked sufficient assets to execute against. In support of this position, the Trustee cited to the holdings of two Ohio cases. First, in *Gaib v. Gaib* it was held that:

> By filing the creditor's bills, plaintiff secured a lien on the assets of defendant which he attached assuming that plaintiff can satisfy the requirement of R.C. 2333.01 that defendant did not have sufficient real or personal property subject to levy on execution to satisfy the judgment.

14 Ohio App.3d 97, 99, 470 N.E.2d 189, 191 (1983) (internal citations omitted). Second, the Trustee in support of his position cited to *Graybar Elec. Co. v. Keller Elec. Co.*, where it was stated:

> In a complaint for a creditor's bill, the complainant must aver generally that the judgment debtor does not have sufficient personal or real property subject to levy on execution to satisfy the judgment. When the judgment debtor, in its answer, denies the complainant's averment, the plaintiff must offer evidence that the judgment debtor lacks sufficient property on which to levy execution.

113 Ohio App.3d 172, 175, 680 N.E.2d 687, 689 (1996) (internal citations omitted).

██ A close review of the above language, however, shows that it does not stand for the proposition espoused by the

Trustee.[2] This is because while the above language clearly shows that a plaintiff who brings a complaint for a creditor's bill must, upon the debtor's denial, establish the averments contained in his complaint, nowhere in the above language is it stated that a lien is only created at the time the averments of the creditor's complaint are established. In other words, nothing in the above language indicates that as a condition precedent to obtaining a lien, a judgment creditor must offer evidence of a judgment debtor's lack of sufficient property on which to levy. In fact, just the opposite is true as Ohio law has repeatedly held that when a complaint for creditor's bill is brought a lien is automatically created, at the very latest, when service of the complaint is perfected. *Willoughby,* 19 Ohio App.3d at 55, 482 N.E.2d 1267; *Catawba West, Inc. v. Domo,* 75 Ohio App.3d 80, 87, 598 N.E.2d 883, 887 (1991); *Huston Assoc. v. VWV, Inc.,* Lake App. No. 92–L–050, unreported, 1992 WL 387351 (Dec. 18, 1992); *Rushworth v. Rosie,* No. 98–G–2186, unreported, 1999 WL 1073793 (Oct. 22, 1999).

■ Notwithstanding, it is abundantly clear from the holdings of *Gaib v. Gaib and Graybar Elec. Co. v. Keller Elec. Co.,* that if a judgment creditor, upon the debtor's denial, does not sustain his burden of proof (i.e., that the debtor has insufficient property on which to levy), any lien against which the judgment creditor had formerly maintained against the debtor's property will be lost. In this case, however, considering that the Debtor's intervening bankruptcy stayed GRC's complaint for a creditors bill, no such determination was made. Furthermore, given the reality

that the Debtor admitted, through his bankruptcy petition, that he was insolvent, it is highly unlikely that the Debtor could successfully controvert GRC's averment that he lacked sufficient assets upon which to execute. Accordingly, based upon these considerations, it is the decision of this Court that GRC maintains, to the extent provided for by Ohio law, a valid lien against the Debtor's insurance renewal commissions. The Court thus now turns to address the next issue raised by the Parties which concerns what, if any, impact the Consumer Protection Act has on GRC's ability to recover against its security interest in the Debtor's insurance renewal commissions.

■ The Consumer Protection Act was created, in part, to prevent certain predatory practices by creditors. *In re Lawrence,* 205 B.R. 115, 117 (Bankr.E.D.Tenn. 1997). As a part of this stated purposes, the Consumer Protection Act places limitations on the amount of an employees wages that may be subject to a garnishment action; this amount, as set forth in 15 U.S.C. § 1673(a), is the lesser of (1) twenty-five (25) percent of a debtor's weekly disposable earnings, or (2) the amount by which the debtor's disposable earnings exceed thirty (30) times the federal minimum hourly wage. Disposable earnings are defined as "that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld." 15 U.S.C. § 1672(b).

In *Kokoszka v. Belford,* 417 U.S. 642, 651, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974), the Supreme Court of the United States was presented with a case involving the

---

**2.** A side note for the record. In this case, the creditor's bill filed by GRC averred that its execution against the Debtor yielded insufficient assets to satisfy its judgment. Thus, it is clear that GRC's complaint for a creditor's bill properly averred, as is required in an action brought under O.R.C. § 2333.01, that the Debtor did not have sufficient personal or real property to satisfy its judgment.

interplay between bankruptcy law and the limitations on garnishment contained in the Consumer Protection Act. The specific issue the Supreme Court was asked to address in *Kokoszka v. Belford* was this: Does the Consumer Protection Act's limitation on the garnishment of earnings apply in bankruptcy so as to exempt 75% of a debtor's tax refund from the jurisdiction of the bankruptcy trustee. In addressing this issue, the Court, after thoroughly examining the legislative history of the statute, found that once a debtor enters bankruptcy, the protections afforded to the debtor by the Consumer Protection Act were no longer applicable; specifically, the Court stated:

> An examination of the legislative history of the Consumer Protection Act makes it clear that, while it was enacted against the background of the Bankruptcy Act, it was not intended to alter the clear purpose of the latter Act to assemble, once a bankruptcy petition is filed, all of the debtor's assets for the benefit of his creditors. Indeed, Congress' concern was not the administration of a bankrupt's estate but the prevention of bankruptcy in the first place by eliminating an essential element in the predatory extension of credit resulting in a disruption of employment, production, as well as consumption and a consequent increase in personal bankruptcies.
> ***
> In short, the Consumer Credit Protection Act sought to prevent consumers from entering bankruptcy in the first place. However, if, despite its protection, bankruptcy did occur, the debtor's protection and remedy remained under the Bankruptcy Act.

417 U.S. at 650–51, 94 S.Ct. at 2436. The Court then went on to state:

> There is every indication that Congress, in an effort to avoid the necessity of

bankruptcy, sought to regulate garnishment in its usual sense as a levy on periodic payments of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis. There is no indication, however, that Congress intended drastically to alter the delicate balance of a debtor's protections and obligations during the bankruptcy procedure.

*Id.* at 651, 94 S.Ct. 2431. Accordingly, based upon this analysis, the Supreme Court held that the Consumer Protection Act did not restrict the right of a bankruptcy trustee to treat an income tax refund as nonexempt property of the bankruptcy estate. *Id.* at 652, 94 S.Ct. 2431.

■ The legal issue presented in this case, of course, differs somewhat from that presented in *Kokoszka v. Belford* in that the roles of the Parties are reversed; that is, in the instant case it is the Trustee, and not the Debtor, who seeks the protection afforded by the Consumer Protection Act. However, as set forth in *Kokoszka*, the Consumer Protection Act was designed to protect consumers/debtors and not creditors. *Long Island Trust Co. v. United States Postal Service*, 647 F.2d 336, 339 (2nd Cir.1981). By analogy then, the Consumer Protection Act should not apply to a bankruptcy trustee because they, in their capacity as a representative of a debtor's bankruptcy estate, work on behalf of unsecured creditors. *In re Harp*, 166 B.R. 740, 746 (Bankr.N.D.Ala.1993). Therefore, in this case simply because it is the Trustee, and not Debtor, who seeks to invoke the protections afforded by the Consumer Protection Act, the Court can see no reason, on this basis alone, to deviate from the rule, established by the Supreme Court in *Kokoszka*, that the limitations on garnishment contained in the Consumer Protection Act are not applicable in a bankruptcy proceeding.

In addition, the Court notes that when insurance renewal commissions are at issue, an additional concern is raised. In particular, insurance renewal commissions, which are paid to an insurance agent when an insured renews his or her policy, do not necessarily require the rendering of any future services. *See Yoppolo v. Golde (In re Golde)*, 253 B.R. 843 (Bankr.N.D.Ohio 2000) (discussing in detail insurance renewal commissions). The Consumer Protection Act, however, only applies to "earnings" which, although "earnings" may according to its statutory definition include commissions,[3] has been held to only apply to compensation received for personal services, notwithstanding any label given to the contrary. *BancOhio Nat'l Bank v. Box*, 63 Ohio App.3d 704, 707, 580 N.E.2d 23, 24 (1989); *Gerry Elson Agency, Inc. v. Muck*, 509 S.W.2d 750, 753 (Mo. Ct.App.1974). Accordingly, for this reason, and based upon the Supreme Court's holding in *Kokoszka v. Belford*, this Court will not afford the Trustee the protections provided for by the Consumer Protection Act.

■■■ The last issue the Court needs to address is whether the Trustee is entitled to compensation under 11 U.S.C. § 506(c) which constitutes an important exception to the general rule that secured claims are superior to administrative claims. This section provides that:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

Pursuant to this statutory language, three requirements are necessary for a bankruptcy trustee to recover the cost and expenses in preserving collateral subject to a valid security interest: (1) the expenditure was necessary; (2) the amounts expended were reasonable; and (3) the creditor benefitted from the expenses. *Matter of P.C., Ltd.*, 929 F.2d 203, 205 (5th Cir. 1991). The burden of demonstrating the existence of these elements is on the party seeking recovery. *Id.*

■■ In this case, the Court after reviewing all of the evidence presented finds that the Trustee has sustained his burden with respect to the above elements. In this regard, the Court makes a few observations. First, in considering both the many procedural hurdles and legal issues encountered in the Trustee's attempt to recover the Debtor's insurance renewal commissions, the Trustee's fees and expenses of Eleven Thousand Four Hundred Eighteen and 75/100 dollars ($11,418.75) are reasonable. Second, when considering the fact that GRC did not immediately assert its status as a secured party—i.e., by filing a proof of claim as a secured creditor or by bringing a motion for relief from stay—the Court is of the view that the Trustee's actions, in addition to being necessary to preserve an estate asset, directly benefitted GRC. Finally, and along this same line, the Court observes that if GRC felt that the Debtor's insurance renewal commissions were worth considerably more than the Twenty-five Thousand dollar ($25,000.00) figure put forth by the Trustee, it could have purchased the Trustee's interest therein.

Thus to summarize, GRC, for purposes of bankruptcy law, will be treated as a secured creditor with respect to the Debtor's insurance renewal commissions. The Trustee, however, will be entitled to recov-

---

**3.** Under 15 U.S.C. § 1672(a), "the term 'earnings' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program."

er his fees and expenses in preserving GRC's collateral pursuant to 11 U.S.C. § 506(c). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Objection of the Trustee, John J. Hunter, to GRC Group's Amended Proof of Claim, be, and is hereby, OVERRULED.

It is **FURTHER ORDERED** that pursuant to 11 U.S.C. § 506(c), the Trustee, John J. Hunter, be, and is hereby, entitled to Eleven Thousand Four Hundred Eighteen and 75/100 dollars ($11,418.75) in fees and expenses.

