NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0466n.06

No. 16-4114

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KIRK EXCAVATING & CONSTRUCTION, INC., | ) | |
| | ) | **FILED** |
| Plaintiff and Counter-Defendant, | ) | Aug 09, 2017 |
| v. | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| COLUMBUS EQUIPMENT COMPANY, | ) | On Appeal from the United States District Court for the Southern District of Ohio |
| | ) | |
| Third-Party Defendant-Appellee, | ) | |
| | ) | |
| HIGHWAY EQUIPMENT COMPANY, INC., | ) | |
| | ) | |
| Third-Party Defendant-Appellant. | ) | |
| _____/ | ) | |

**Before: GUY, SILER, and DONALD, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.** The appeal in this procedurally convoluted case boils down to a priority dispute between two creditors over interpleaded funds. The controversy is between (1) Columbus Equipment Company, which was found to be the first-priority lienholder; and (2) Highway Equipment Company, which argues on appeal that Columbus's garnishment and creditor's bill liens were defective and therefore subordinate to its own creditor's bill lien. Highway Equipment also argues that it was error to have made the priority determination without first allowing it to conduct discovery. The interpleaded funds—$440,198.73—remain on deposit with the court because disbursement to Columbus Equipment

was stayed until further order. We review the magistrate judge's decision under the "collateral order doctrine," and affirm the determination that Columbus's claim to the interpleaded funds was entitled to priority.[1]

## I.

### A.     Interpleader Action

This action began in October 2014 when Kirk Excavating & Construction, Inc., sued in Ohio state court to recover for unpaid work it had performed for AYS Oilfield, a dba of RKJ Enterprises, LLC dba At Your Service ("RKJ Enterprises"). Kirk Excavating also asserted equitable claims against amounts allegedly owed to RKJ Enterprises by Access Midstream Partners, LP, and its general partner Access Midstream Partners, GP, LLC. The Access Midstream Partners defendants removed the case to federal court, and Texas State Bank intervened to assert claims against the same funds as Kirk Excavating. Those funds represented amounts that had been retained under a contract for construction services to be performed by "At Your Service Construction, Inc.," which later admitted to being another dba of RKJ Enterprises. It would become apparent that those funds were actually being held by Access MLP Operating, LLC—an entity that described itself as a subsidiary of Access Midstream Partners, LP.

The interpleader came about because, in April 2015, Access MLP Operating intervened in this action as a defendant and a counter-, cross-, and third-party claimant for statutory interpleader seeking to have the court resolve the various competing claims to the funds it was holding. To that end, Columbus Equipment, Highway Equipment, Horizon Supply Company, and At Your Service Construction were added as third-party defendants. In an order entered in October 2015, the magistrate judge determined that interpleader was proper and ordered that, upon deposit of the full amount, the parties would be enjoined from initiating or pursuing any

---

[1]All of the parties consented to disposition by a magistrate judge under 28 U.S.C. § 636(c).

other proceeding with respect to the interpleaded funds.  The funds—initially declared to be $196,000 and later revised to $440,198.73—were deposited with the court in November 2015.

After a status conference in April 2016, at which Highway Equipment claims it asked to be allowed to conduct discovery, the magistrate judge ordered simultaneous briefing and responses from any party asserting priority to the interpleaded funds.  Only Columbus Equipment, Highway Equipment, Texas State Bank, and Access MLP Operating submitted briefs.  On September 12, 2016, the magistrate judge:  (1) rejected Access MLP Operating's claim that it was entitled to recover costs it incurred to complete unfinished work or for attorney fees expended; (2) found that Texas State Bank did not have a perfected security interest in the funds; and (3) concluded that Columbus Equipment's liens were valid and superior to Highway Equipment's lien.  Because the balance due to Columbus exceeded the amount of the interpleaded funds, the relative priority of the remaining claims was not determined.  The order directed disbursement to Columbus, and solicited Kirk Excavating's intentions with respect to its remaining claims.  Kirk declared that it intended to dismiss its claims under Fed. R. Civ. P. 41, although dismissal still has not been entered.  Highway Equipment appealed and obtained a stay of the disbursement.

## B.     Facts Relevant to the Priority Determination

At the time that Kirk Excavating was initiating this action in October 2014, Columbus Equipment and Highway Equipment had each already obtained a state court judgment against RKJ Enterprises.  Columbus conducted debtor's examinations, and both Columbus and Highway Equipment took actions to secure liens against what would become the interpleaded funds in this case.  The details of the three relevant judgment creditor actions are summarized below.

***Columbus's Garnishment.***  Columbus filed a garnishment action directed to "Access

Midstream" on October 3, 2014, which was served by certified mail on October 14, 2014.

"Access Midstream" answered on October 21, 2014, admitting that it was holding $196,128 due

under contracts it had with "RKJ Enterprises, LLC dba At Your Service and/or AYS Oilfield."

Through corporate counsel, "Access Midstream" also declared: (1) that those amounts had been

"retained" and were not due under the contract until "completion of all punch list items"; (2) that

it had received "competing claims against the same contract funds earmarked for the debtor";

and that consolidation of all the competing claims in one federal court action was anticipated. In

other words, "Access Midstream" admitted that it held the funds at issue but refused to pay.

Columbus promptly moved for an order to pay, which "Access Midstream" opposed for the same

reasons given in its answer.

It was not until May 2015, that the state court granted Columbus's motion and ordered

that "Access Midstream" pay the funds to the Franklin County Clerk of Courts. Access MLP

Operating—which had by then filed the instant interpleader claims—moved for reconsideration

of the order to pay. Access MLP Operating's motion repeated the claim that the funds were not

due at the time of the garnishment, clarified that it was the entity that held the retained funds, and

stated that there was "no such entity" as "Access Midstream." That motion was never decided,

and the action was stayed by the interpleader order.

***Columbus's Creditor's Bill Action.*** Columbus also filed a separate creditor's bill and

complaint on October 6, 2014, which asserted a lien against equitable or other interests that RKJ

Enterprises had in the possession of "Access Midstream" "by way of a contract, breach of

contract, and other claims, including but not limited to retainage amounts." Columbus served

"Access Midstream" on October 8, 2014, and served RKJ Enterprises (and Ryan Jones dba At

Your Service) on October 9, 2014. "Access Midstream" removed that case to federal court on

October 27, 2014, stating that "Access Midstream" was not a legal entity, but that the entity Columbus was "likely referring to [was] Access MLP Operating, LLC." (N.D. Ohio, No. 14-cv-2389, Doc. 1, ¶ 1.) Columbus filed a motion to remand for reasons not relevant to this appeal, which was granted on August 24, 2015.

Once back in state court, Columbus Equipment moved for leave to amend the complaint for the purpose of changing the defendant's name from "Access Midstream" to "Access MLP Operating, LLC dba Access Midstream." The state court not only granted that motion but also ordered that the amended complaint "relate back" to the filing of the original complaint pursuant to Ohio Civil Rule 15(C). The Amended Creditor's Bill and Complaint was filed on September 28, 2015—within a year of the original complaint. The action was then stayed by the interpleader order.

**Highway Equipment's Creditor's Bill Action.** Highway Equipment filed its creditor's bill and complaint in federal court on December 17, 2014. That action was brought against the debtor RKJ Enterprises, as well as Access Midstream Partners, LP, Access Midstream Partners, GP, LLC, *and* Access MLP Operating, LLC. Highway alleged that "RKJ has an equitable and/or other interest in the possession of the Access Defendants by way of contract, including but not limited to retainage amounts which the Access Defendants have not paid to RKJ." The "Access Defendants" were each served by certified mail on December 29, 2014, and RKJ waived service on March 30, 2015. That action was stayed at Highway's request in June 2015. None of the claimants challenged the validity of Highway Equipment's creditor's bill lien.

## II.

Highway Equipment contends—and Columbus agrees—that this court has appellate jurisdiction to review the magistrate judge's decision even though judgment has not been

entered. This court has an obligation to consider whether jurisdiction has been properly invoked. *Kelly v. Great Seneca Fin. Corp.*, 447 F.3d 944, 947 (6th Cir. 2006). The small class of pre-judgment rulings that may appropriately be deemed "final" under the collateral order doctrine "includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 42 (1995)). Here, the decision conclusively resolved competing claims to the interpleaded funds and ordered disbursement of those funds to Columbus Equipment. Resolution of the interpleader was an important issue independent of the remaining (and apparently abandoned) claims against RKJ Enterprises. The decision appealed from qualifies as a final appealable order for purposes of 28 U.S.C. § 1291.

## III.

Ohio law governs the statutory interpleader claims because jurisdiction is premised on diversity of citizenship. *See Griffin v. McCoach*, 313 U.S. 498, 503 (1941); 28 U.S.C. § 1335(a). The determination that Columbus's claim was entitled to priority is reviewed *de novo*, as it was effectively a decision granting summary judgment as a matter of law. *See Am. Trust v. Am. Comty. Mut. Ins. Co.*, 142 F.3d 920, 922 (6th Cir. 1998).

### A.    Creditor's Bill Actions

A judgment creditor may bring a creditor's bill action to establish a lien against certain equitable interests that the judgment debtor may have, including "in a money contract, claim, or choses in action, due or to become due to him." OHIO REV. CODE § 2333.01; *see also Olive Branch Holdings, LLC v. Smith Tech. Dev., LLC*, 909 N.E.2d 671, 681 (Ohio Ct. App. 2009) ("[A] creditor's bill enables a judgment creditor to secure a lien on those assets of the judgment

debtor that mere execution of the judgment at law cannot reach."). To succeed in a creditor's bill action requires: "(1) the existence of a valid judgment against the debtor, (2) the existence of an interest of the type enumerated in the statute, and (3) the debtor's lack of sufficient personal or real property to satisfy the judgment." *Wesbanco Bank, Inc. v. Ettayem, et al.*, No. 14AP-452/455, 2015 WL 1432551, at *3 (Ohio Ct. App. Mar. 31, 2015) (unreported). There is no dispute that these requirements were met in both parties' creditor's bill actions.

"Upon commencement of a creditor's bill, the judgment creditor not only acquires a lien on the debtor's equitable assets, but also achieves priority over creditors of the judgment debtor without specific liens upon the debtor's interest in the property." *Olive Branch Holdings*, 909 N.E.2d at 683. "[W]hen a complaint for creditor's bill is brought a lien is automatically created, at the very latest, when service of the complaint is perfected." *In re Wiener*, 276 B.R. 810, 814 (Bankr. N.D. Ohio 2001) (citing cases); *see also Morgan Bank NA v. Sec.-Conn. Life Ins. Co.*, No. 20594, 2001 WL 1545657, at *3 (Ohio Ct. App. Dec. 5, 2001) (unreported) (explaining that controlling Ohio law provides a lien and priority over unsecured creditors when the action is commenced and not upon its conclusion).

As the parties' arguments reflect, there is some uncertainty in the Ohio case law about whether a creditor's bill lien is effective on the date the complaint is filed or not until it is served. What is clear, however, is that filing *without* service will not give rise to a creditor's bill lien. *See, e.g.*, *Rushworth v. Rosie*, No. 98-G-2186, 1999 WL 1073793, at *3 (Ohio Ct. App. Oct. 22, 1999) (unreported) (holding that a lien was not secured because the complaint for the creditor's bill was never served); *Lake Cty. Nat'l Bank v. Amco Indus., Inc.*, No. 7-042, 1979 WL 208098, at *1-2 (Ohio Ct. App. May 21, 1979) (unreported) (holding that creditor's bill lien did not attach on filing because service took place after the funds had already been disbursed); *but see Russ*

*Financial v. Greenberg*, No. 3-75-38, 1976 WL 188313, at *2-3 (Ohio Ct. App. April 23, 1976) (unreported) (holding that creditor's bill filed and served prior to a competing lien had priority "[u]pon service of summons" that "ranks according to the date of service").

But, uncertainty about whether the lien attaches upon filing or service is immaterial because Columbus both filed and served its creditor's bill action before Highway Equipment did. Rather, Highway Equipment argues that Columbus's creditor's bill action failed to give rise to a lien because Columbus named "Access Midstream" as the defendant and, therefore, failed to achieve proper service or adequately describe the property to be attached. Highway also argues that this defect could not be cured by subsequently amending the complaint to replace "Access Midstream" with "Access MLP Operating, LLC, dba Access Midstream."[2]

### 1. Non-Existent Entity

Relying on *Patterson v. V&M Auto Body*, 589 N.E.2d 1306 (Ohio 1992), Highway Equipment argues that Columbus's suit against the non-entity Access Midstream was never properly commenced. *Patterson* does not control here.

The Ohio Supreme Court later explained that *Patterson* "held that a plaintiff may not maintain an action against a defendant solely under a fictitious name where the plaintiff knows that the defendant does business as a sole proprietor." *Family Medicine Found., Inc. v. Bright*, 772 N.E.2d 1177, 1180 (Ohio 2002). The issue in *Bright* was whether a default judgment entered against the "Family Practice Center" was void because that was a fictitious name for the "Family Medicine Foundation, Inc. (FMF)." The Ohio Supreme Court "declined to apply *Patterson*" and held that Ohio Revised Code § 1329.10(C) permits a plaintiff to commence or

---

[2]Highway contends that the magistrate judge improperly found these arguments were foreclosed by (1) the finding in the creditor's bill action that uncontested service was effected on October 8, 2014; and (2) the decision granting the motion to amend the complaint after remand. Reviewing the decision *de novo*, it is not necessary to delve into what weight these rulings were given or whether they may have preclusive effect.

maintain an action solely against the user of a trade or fictitious name. *Id.*; *see also* § 1329.10(C) ("An action may be commenced or maintained against the user of a trade name or fictitious name whether or not the name had been registered or reported in compliance with R.C. § 1329.01.") The Court also noted—in what appears to be dicta—that "even if *Patterson* were applicable, it would not benefit FMF because when the complaint was brought . . . [plaintiffs] had no knowledge that FMF was the legal entity behind a fictitious name." *Id.*

Highway Equipment argues that *Bright* should be understood to extend the lack-of-knowledge requirement to circumstances other than sole proprietorships. *See, e.g.*, *Scaglione v. Saridakis*, No. 91490, 2009 WL 2894334, at *3 (Ohio Ct. App. Sept. 10, 2009) (unreported) (quoting the trial court's finding that the holding in *Patterson* and the dicta in *Bright* required a plaintiff "to make at least some effort to determine the individual or legal entity behind a fictitious name, especially in situations involving sole proprietorship"). But, since *Scaglione* was a case involving a judgment against the fictitious name of a sole proprietorship, the case falls squarely within the holding of *Patterson*. *See also Illuminating Company v. Riverside Racquet Club, Ltd.*, 845 N.E.2d 526, 528 (Ohio Ct. App. 2005) (finding a question of fact whether plaintiff knew entity was a fictitious name and noting that there was no evidence that a limited partnership existed).

Columbus, on the other hand, relies on other Ohio court decisions that distinguish *Patterson* and follow *Bright*. *See, e.g.*, *Engelhardt v. Bluett*, No. C-160189, 2016 WL 5888002, at *2 (Ohio Ct. App. Oct. 7, 2016) (unreported) (finding insurance company could be sued in its trade name and denying relief from entry of default judgment); *see also Williams v. Gray Guy Group, LLC*, _N.E.3d_, 2016 WL 7493709, at *3 (Ohio Ct. App. Dec. 29, 2016) (holding plaintiffs could enforce judgment against business in the fictitious name of its lapsed LLC). In

fact, one case expressly read *Bright* as limiting *Patterson*'s holding to circumstances in which the plaintiff knew the defendant did business *as a sole proprietor*. *Stewart v. Depth Construction*, No. 26643, 2013 WL 4133625, at *4 (Ohio Ct. App. Aug. 13, 2013) (unreported) (reversing summary judgment in favor of a defendant who was sued and defended under a trade name but claimed to be a proprietorship). Since there is no dispute that Access Midstream was not a name used by a sole proprietorship, this case is governed by *Bright* and not *Patterson*.

Moreover, even if the Ohio courts would apply *Patterson* to this case, *Patterson* involved a judgment entered in a fictitious name even though the plaintiff (1) was repeatedly put on notice that the party was a sole proprietorship *and* (2) failed to move to amend the complaint to name the person using the fictitious name under Ohio Civil Rule 3(A). *See Stewart*, 2013 WL 4133625, at *4. Thus, even if the Ohio courts would apply *Patterson* to this case, Columbus took the necessary step to amend its complaint to correct the name of the defendant that was holding the funds. *Patterson*, 589 N.E.2d at 1309 (explaining that judgment rendered against a defendant not a legal entity is void but an action is commenced if service is obtained within one year upon an incorrectly named defendant whose name is later corrected under Ohio Civ. R. 3(A)). Nothing in *Patterson* suggested that the amendment needed to be secured as soon as possible.

### 2. "Relation Back" under Ohio Civil Rule 3(A) and 15(C)

Highway maintains that the state court should not have ordered that Columbus's amended creditor's bill and complaint relate back to the original filing. Ohio's Civil Rule 3(A), which differs from its federal counterpart, states that:[3]

> A civil action is commenced by the filing of a complaint with the court, if service is obtained within one year from such filing upon a named defendant, or upon an incorrectly named defendant whose name is later corrected pursuant to Rule

---

[3]Fed. R. Civ. P. 3, provides simply that: "A civil action is commenced by filing a complaint with the court."

> 15(C), or upon a defendant identified by a fictitious name whose name is later corrected pursuant to Rule 15(D).

Civil Rule 15(C) provides, in turn, that: "An amendment changing the party against whom a claim is asserted relates back if" the claim asserted in the amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading" and

> within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Here, the first two conditions for relation back under Rule 15(C) are plainly met. The amended creditor's bill and complaint made the same claims as the original. Nor can there be any dispute that the party to be added—Access MLP Operating—"received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits." Highway Equipment contends that the final requirement was not satisfied because Columbus did not "mistake" the proper party for Access Midstream, but, rather, failed through carelessness or lack of diligence to determine the proper party. This contention is without merit.

"The plain language of [Rule 15(C)] relates to the substitution of a proper party for one previously misidentified in the original complaint." *Kraly v. Vannewkirk*, 635 N.E.2d 323, 326 (Ohio 1994) (citing *Cecil v. Cottrill*, 618 N.E.2d 133, 135 (Ohio 1993)). Moreover, this is the case even when the complaint misidentified the proper party by using the name of a non-existent entity. For example, in *Hardesty v. Cabotage*, the Ohio Supreme Court held that Rule 15(C) permitted the relation back of an amended complaint where the original complaint was filed against a non-existent entity and the amended complaint that properly named the intended

defendant was filed within one year of the filing of the original complaint. 438 N.E.2d 431, 433-34 (Ohio 1982); *see also Milos v. Doe*, 950 N.E.2d 592, 592-93 (Ohio Ct App. 2011) (rejecting argument that amended complaint correcting insurance company's name could not relate back to the original complaint brought in its trade name).

Highway Equipment suggests that Columbus's amendment should not relate back because it was an attempt to add a previously unknown defendant. *See, e.g.*, *Maccharulo v. Gould*, 643 F. Supp. 2d 587, 596 (S.D.N.Y. 2009); *Newby v. Enron Corp. (In re Enron Corp. Secs.)*, 465 F. Supp. 2d 687, 723 (S.D. Tx. 2006). On the contrary, as in *Milos*, "it was clear from the original complaint who the intended defendant was." 950 N.E.2d at 594. Indeed, Access Midstream's own removal petition acknowledged that the intended defendant was likely Access MLP Operating. This case is properly recognized as one of misnomer—a defendant identified by an incorrect name. *See* 6A Wright, Miller & Cooper, *Federal Practice & Procedure* § 1498.2, p. 160 (3d ed. 2010) ("A misnomer is involved when the correct party was served so that the party before the court is the one plaintiff intended to sue but the name or description of the party in the complaint is deficient in some respect.").

Highway Equipment also urges this court to conclude that Rule 15(C)'s requirements were not satisfied because Columbus knew or should have known the correct name for the party that held the funds. However, the United States Supreme Court has rejected the same argument in addressing a nearly identical requirement in the analogous federal rule. *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 (2010) (reversing decision that found no "mistake" because the plaintiff either knew or should have known of the proper party's identity). The Court explained that in focusing on the plaintiff's knowledge, the "Court of Appeals chose the wrong starting point." *Id.* "Information in the plaintiff's possession is relevant only if it bears on the

defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity. For purposes of that inquiry, it would be error to conflate knowledge of a party's existence with the absence of mistake." *Id.* In this case, there can be no question that the party to be added—Access MLP Operating—knew within the one-year period for commencing an action that, but for a mistake regarding the identity of the proper party, the action would have been brought against it.

Lastly, Highway Equipment raises several other arguments against "relation back" that are without basis. First, Highway asserts that operation of Rule 15(C) is unconstitutional because the rules of procedure cannot "abridge, enlarge, or modify any substantive right." OHIO CONST., Art. IV § 5(B). But, no authority is offered to support the claim that relation back of an amendment to correct a misnomer would be found unconstitutional. Second, although Highway asserts that Rule 15(C) *only* applies to relation back for statute of limitations purposes, there is no such limitation in the rule itself. Nor has Highway offered any authority that supports this proposition. Third, Highway erroneously conflates relation back of an amendment under Rule 15(C) with "relation back of perfection" of the lien itself. *See In re Garden Inn Steak House, Inc.*, 22 B.R. 830, 833 (Bankr. N.D. Ohio 1982) (explaining that Ohio's mechanic's lien statute expressly provides for relation back of perfection of the lien to the time when the services were performed).

It was not error to conclude that Columbus Equipment's claim to the interpleaded funds had priority because it commenced its creditor's bill action asserting an equitable lien against those funds before Highway Equipment did. As a result, it is not necessary to decide whether Columbus also had a valid garnishment lien.

**B.      Discovery**

Finally, reversal is sought on the grounds that Highway Equipment asked for but was denied the opportunity to conduct discovery during two status conferences. Highway Equipment was added as a party in April 2015 and consented to disposition by the magistrate judge in May 2015. Because there was no formal request for discovery, there is no record of what was actually sought or denied. In fact, the only indication that Highway Equipment wanted to conduct discovery appears in a one-page argument at the close of its brief addressing the priority determination. There, Highway asserted that discovery should be allowed "as to certain testimony or documents that may not be part of the public record and that would assist in the resolution of this matter." A closer look reveals that Highway did not specifically identify any discovery it wanted concerning Columbus Equipment's claim. Instead, the eleven areas of discovery that were identified all related to the claim of Texas State Bank.

Highway contends on appeal that it should have been allowed to conduct discovery "on a number of issues—including whether Columbus Equipment knew or should have known the correct identity of Access MLP Operating and whether 'Access Midstream' is trade name or a fictitious name for Access MLP Operating." Setting aside whether the issue was preserved, Columbus's knowledge regarding the correct identity of the defendant would not affect the relation back of the amended creditor's bill. Further, Access Midstream received, did not object to service of, and answered the garnishment and creditor's bill actions while acknowledging that the funds at issue were held by Access MLP Operating. Highway Equipment has not identified any discovery that would be material to the dispositive issues on appeal.

**AFFIRMED.**